## ALEXANDER *v.* BARTLETT

1. CONSTITUTIONAL LAW—SCHOOLS AND SCHOOL DISTRICTS—TRANSPORTATION OF NON-PUBLIC SCHOOL CHILDREN.

   Statute empowering local school districts to furnish transportation without charge for pupils of state-approved non-public schools *held*, not to violate United States constitutional prohibition against establishment of religion, since the purpose of the statute is secular, in that it aims to help school children to be safely transported to receive an education (US Const, Ams 1, 14; PA 1963, No 241; CLS 1961, § 340.590[a] *et seq.*).

2. SAME—COMPULSORY EDUCATION—PAROCHIAL SCHOOLS—TRANSPORTATION OF NON-PUBLIC SCHOOL CHILDREN.

   Statute empowering local school districts to furnish transportation without charge for pupils of state-approved non-public schools *held*, not to violate State constitutional provision against establishment of religion, since the statute assists parents to comply with the compulsory education law while it recognizes their right to send their children to accredited parochial schools by providing a safe and efficient means of transportation (Const 1963, art 1, § 4; PA 1963, No 241; CLS 1961, § 340.590(a) *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 16 Am Jur 2d, Constitutional Law § 338 *et seq.*

3. Same — Parochial Schools — Transportation of Non-Public School Children — Allotment to School Districts From State School Aid Funds.

> Statute empowering school districts to furnish transportation without charge for pupils of state-approved non-public schools and providing that such school districts are eligible to receive an allotment from the state school aid fund therefor *held*, not to violate State constitutional provision establishing a State school aid fund to be used exclusively for aid to school districts, higher education, and school employees' retirement systems, since under a substantially similar provision in the prior constitution it had been established that the legislature could so act, and therefore in approving the provision in the Constitution of 1963 it must be presumed that the people empowered the legislature to continue to enact such a statute (Const 1963, art 9, § 11; PA 1963, No 241; CLS 1961, § 340-.590(a) *et seq.*).

4. Same — Parochial Schools — Transportation of Non-Public School Children — School Districts to Employ Alternate Means of Transportation.

> Statute empowering local school districts to furnish transportation without charge for pupils of state-approved non-public schools and to choose from alternate means of transportation that which is the most economical and efficient *held*, not to violate State constitutional provision establishing a state school aid fund to be used exclusively for stated purposes, since school districts have possessed this power for many years, and there is no limitation in this constitutional provision upon the authority of the legislature to permit school districts to determine what alternate means are best to discharge the duties imposed on them to provide transportation.

Appeal from Ingham, Hughes (Sam Street), J. Submitted Division 2 February 7, 1968, at Lansing. (Docket No. 4,200.) Decided October 25, 1968.

Complaint by Frederick Alexander and 5 other taxpayers against Lynn M. Bartlett and 22 other public officials to declare a public act unconstitutional. Gerald D. Bass and 6 other taxpayers intervened as defendants. Judgment for defendants. Plaintiffs appeal. Affirmed.

*MacLean, Seaman & Laing,* and *Erwin Ellman* and *Leo Pfeffer,* for plaintiffs.

*Eugene Krasicky,* for defendants Bartlett and Brown.

*Robert M. Thrun,* for Williamston School Board.

*Stuart D. Hubbell* and *Leo A. Farhat,* for intervening defendants.

CORKIN, J. By PA 1963, No 241 (MCLA § 340.590a *et seq.,* Stat Ann 1968 Rev § 15.3590[1] *et seq.*) the legislature provided for transportation of pupils to public or State-approved nonpublic schools. Plaintiff taxpayers started this suit for a declaratory judgment and for injunctive relief in Ingham county circuit court on May 28, 1964, contending that the act was in violation of US Const, Am 1, and in violation of Const 1963, art 1, § 4, and art 9, § 11, because it appropriated money from the school aid fund for the benefit of parochial schools.

After issue was joined and motions for summary judgment were filed by plaintiffs and defendants, Judge Sam Street Hughes rendered an opinion in which it was held that PA 1963, No 241 was not in violation of the above noted constitutional provisions. After a motion for rehearing was denied, and a further opinion on the motion rendered, appeal was taken to this Court.

In substance, act 241 provides that when a school district provides transportation for any of its resident pupils, except those that are mentally or physically handicapped, it shall be required to provide transportation without charge to every resident child to the public or nearest nonpublic school meeting

minimum state standards, provided that the child lives at least 1–1/2 miles from the school of attendance and that the school district is eligible to receive an allotment from the State school aid fund for such transportation.

In *Everson* v. *Board of Education* (1947), 330 US 1 (67 S Ct 504, 91 L Ed 711), the United States Supreme Court upheld a New Jersey statute providing for the reimbursement of parents for the transportation of children to and from parochial schools. In reaching its decision, the United States Supreme Court recognized the right of parents to send their children to a religious rather than a public school if the religious school met secular educational requirements of the state; *Pierce* v. *Society of Sisters* (1925), 268 US 510, 45 S Ct 571, 69 L Ed 1070. The Supreme Court concluded that the New Jersey statute did no more than provide a general program to help parents get their children, regardless of the type of school, safely and expeditiously to and from an accredited school and thus served a public purpose, and so was not in violation of US Const, Ams 1 and 14.

It should also be noted that in *School District of Abington Township* v. *Schempp* (1963), 374 US 203 (83 S Ct 1560, 10 L Ed 2d 844), the following test was applied to measure a state statute by the First Amendment (p 222):

"[W]hat are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the establishment clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion."

It is the opinion of this Court that the purpose of act 241 is to help children get to public and nonpublic schools in safety and good health in order to receive an education and to become mature and intelligent citizens. The purpose of the statute being clearly secular, its primary effect cannot be said to either advance or inhibit religion. Thus the Court finds that act 241 is not unconstitutional as far as the United States Constitution is concerned.

Plaintiffs claim that act 241 violates Const 1963, art 1, § 4, because it compels them to contribute to the support of a place of worship and provides for the appropriation of money from the state treasury for the benefit of a religious sect or society. We quote, with approval from Judge Hughes' opinion on this issue:

"Plaintiffs rely on portions of the second and third sentences of article I, section 4 to support their claim that bus transportation cannot be furnished to school children to and from church or parochial schools. The first sentence of article I, section 4 guarantees to every person the liberty to worship God according to the dictates of his own conscience, and the fourth sentence of article I, section 4 commands that the civil and political rights, privileges and capacities of no person shall be diminished or enlarged on account of his religious belief.

"Article I, section 4, like any constitutional provision, must be read by this court as a whole. It must be so construed as to give meaning to all of its provisions. The first and last sentences, too, must be considered and given effect. The first sentence of article I, section 4 guarantees the free exercise of religion. The last sentence prohibits the granting or denial of any right or benefit on the basis of a religious test. The court is of the opinion that this section read as a whole, clearly incorporates the principle that the State shall be neutral toward

religion and shall neither favor nor inhibit its pursuit."

We conclude, as did Judge Hughes, that giving full meaning and effect to article I, section 4, as a whole, results in maintaining the neutrality of the government toward religion, safeguards the free exercise of religion, and prohibits the establishment of religion. This is similar to the United States Supreme Court's interpretation of the establishment clause of the United States Constitution as set forth in *Schempp, supra*.

It has long been a policy of this state that children receive an education. This policy finds expression in the compulsory education law which requires parents and guardians to send children to school. However, the compulsory education law recognizes the right of parents to send their children to parochial schools meeting the minimum state standards rather than to public schools if they so elect.

The Court is of the opinion that act 241 encourages the pursuit of education, assists parents in complying with the compulsory education law while, at the same time, recognizing their right to send their children to an accredited parochial school, and provides a safe and efficient means of transportation to and from school. As such, the purpose of the act is secular, and we do not find that its primary effect is to either inhibit or advance religion.

Finally, plaintiffs claim that PA 1963, No 241, violates Const 1963, art 9, § 11. Said article 9 provides:

*"There shall be established a state school aid fund which shall be used exclusively for aid to school districts, higher education and school employees' retirement systems, as provided by law.* One-half of all taxes imposed on retailers on taxable sales at retail of tangible personal property, and other tax rev-

enues provided by law, shall be dedicated to this fund. Payments from this fund shall be made in full on a scheduled basis, as provided by law." (Emphasis supplied.)

In substance, the language is the same as that found in Const 1908, art 10, § 23, following amendment adopted by the people on November 2, 1954.

Following the amendment of article 10, § 23, the legislature immediately implemented it by adopting PA 1955, No 238. The same legislature also enacted the school code of 1955, CL 1948, § 340 *et seq.* (Stat Ann 1968 Rev § 15.3001 *et seq.*). Section 16 of act 238 made appropriations from the school aid fund for the purpose of paying for transportation of pupils not to exceed $60 per year per pupil transported. Section 592 of the school code of 1955 authorized the board of education of any school district providing for the transportation of resident children to also transport resident children who attended private or parochial schools on an equal basis.

The Attorney General rendered his opinion, dated September 19, 1955, 1 OAG, 1955, No 2296, p 469, construing section 16 of Act 238, holding that the allotment from the state school aid fund for transportation must be based upon pupil count of those transported at the expense of the school district to both the public and private or parochial schools on an equal basis. Thus from the very time of the implementation of payments from the state school aid fund constitutionally established by the people, the fund was used to reimburse school districts for transporting children to public and private or parochial schools.

When the Constitutional Convention met in 1961 and completed their work in 1962 in adopting the Michigan Constitution of 1963, they knew that under

PA 1957, No 312, § 11, as amended by PA 1959, No 267, not more than 12 million dollars was appropriated annually from the school aid fund to be distributed for bus transportation for children in attendance at both public and private or parochial schools. They also knew that section 592 of the school code of 1955 authorized boards of education to transport children to private and parochial schools. It must follow therefore, that article 9, section 11, must be presumed to have been framed and adopted in the light of existing law.

The action of the delegates to the Constitutional Convention of 1961 shows that they acted in the light and understanding of existing law, and chose to continue, without change, that portion of the Constitution of 1908 establishing the school aid fund. On May 11, 1962, the Convention approved article 9, section 11, to read in part:

"There shall be established a state school aid fund which shall be used exclusively for the support of public education and school employees' retirement systems, as provided by law."

See 2 Official Record, Constitutional Convention 1961, pp 3231, 3274.

On the last day of the Convention, August 1, 1962, article 9, section 11, was amended to return to the original language of the 1908 Constitution to read in part as follows:

"There shall be established a state school aid fund which shall be used exclusively for aid to school districts, higher education and school employees' retirement systems, as provided by law."

See 2 Official Record, Constitutional Convention 1961, p 3292.

The framers of the Michigan Constitution of 1963, and the people in ratifying the Constitution, acting

upon their understanding of existing law as it then was construed and administered providing for the reimbursement of school districts from the school aid fund for the transportation of school children to and from public, private or parochial schools, placed no limitation on the legislature to continue to make provision for reimbursement to school districts for such transportation as provided by law.

We note that at all times moneys in the school aid fund to reimburse school districts for the cost of transportation of school children have been paid to school districts as provided by law and to no one else. We hold that Article 9, Section 11, is not offended when the legislature adopts a general program for the transportation of school children to public and nonpublic schools and provides by law for the reimbursement of school districts for the cost of such transportation.

Nor do we find any violation of Article 9, Section 11, in Act 241 because the legislature has provided that school districts may choose from alternate means to furnish transportation of children to and from school that which is the most efficient and economical. School districts have possessed this power for many years, and we find no limitation by Article 9, Section 11, upon the authority of the legislature to permit school districts to determine which of alternate means are best for the discharge of duties imposed upon them under Act 241.

We conclude that PA 1963, No 241, does not violate Const 1963, art 9, § 11.

This Court agrees with the *Everson* majority that parents may, in the discharge of their duty under state compulsory education laws, send their children to a religious rather than a public school if the school meets the secular educational requirements imposed by the state. It appears that these parochial schools

meet such requirements. The state contributes no money to the schools. It does not support them. The legislation, as applied, does no more than provide a general program to help parents get their children, regardless of their religion, safely and expeditiously to and from accredited schools.

Affirmed.

QUINN, P. J., and T. G. KAVANAGH, J., concurred.