McLEOD v PROVIDENCE CHRISTIAN SCHOOL

Docket No. 79336. Submitted October 2, 1985, at Grand Rapids. Decided May 19, 1987. Leave to appeal applied for.

Kathleen McLeod, a teacher with the Providence Christian School, a school owned and operated by the Netherlands Reformed Congregation, was not given a position for the 1982-83 school year in accordance with the school's policy not to hire on a full-time basis women with preschool-age children. The policy constituted a tenet of faith of the Netherlands Reformed Congregation. Kathleen McLeod brought an action in the Kalamazoo Circuit Court under the Civil Rights Act against Providence Christian School. Defendant moved for accelerated judgment on the basis that the act as applied was contrary to defendant's First Amendment rights. The court, Charles H. Mullen, J., denied accelerated judgment. Defendant appealed by leave granted.

The Court of Appeals *held:*

1. Defendant would properly be considered an educational corporation whose purpose is to educate the children of the corporation. For purposes of Article Two of the Civil Rights Act, an employer is a person who has one or more employees. Person includes educational corporations. Therefore, defendant is an employer under the act.

2. The provisions of the Civil Rights Act as applied to the employment of teachers in a church-run school do not constitute an undue burden on the free exercise of religion guaranteed by the First Amendment.

3. The Civil Rights Act does not violate the Establishment

REFERENCES

Am Jur 2d, Civil Rights §§ 154 *et seq.*; 193 *et seq.*

Am Jur 2d, Constitutional Law §§ 464 *et seq.*

Am Jur 2d, Statutes §§ 145 *et seq.*

Supreme Court's views on weight to be accorded to pronouncements of legislature, or members of legislature, respecting meaning or intent of previously enacted statute. 56 L Ed 2d 918.

Sex discrimination—Supreme Court cases. 27 L Ed 935.

Judicial construction and application of state legislation prohibiting religious discrimination in employment. 91 ALR3d 155.

Application of state law to sex discrimination in employment. 87 ALR3d 93.

Clause of the First Amendment when applied to church-run schools.

Affirmed.

1. JUDGMENTS — ACCELERATED JUDGMENT.

Accelerated judgment is proper only if no material factual dispute exists between the parties regarding the circumstances which provide the basis for accelerated judgment and, where the plaintiff has demanded a jury trial, an accelerated judgment should be granted only if the trial court can properly conclude as a matter of law that the plaintiff's claim is barred (GCR 1963, 116.3).

2. JUDGMENTS — ACCELERATED JUDGMENT.

A court, in deciding a motion for accelerated judgment, is to accept all well-pled allegations of the nonmoving party as true; if the court engages in fact-finding its decision must be reversed.

3. STATUTES — JUDICIAL CONSTRUCTION.

The guiding principle of statutory interpretation is to determine and effectuate the intent of the Legislature; to ascertain that intent, a court should first review the specific language of the disputed provision, giving all terms their plain and ordinary meaning absent a contrary legislative intent and where an ambiguity is found the court may refer to any factors which may advance the most probable and reasonable legislative intention.

4. CIVIL RIGHTS — SEX DISCRIMINATION — CIVIL RIGHTS ACT.

Sex discrimination under the Civil Rights Act is treatment of similarly situated individuals in different ways because of their sex.

5. CONSTITUTIONAL LAW — FREE EXERCISE CLAUSE.

The Free Exercise Clause constitutes an absolute prohibition against governmental regulation of religious beliefs, but governmental regulation may lawfully impose an incidental burden on otherwise protected religious conduct.

6. CONSTITUTIONAL LAW — FREE EXERCISE CLAUSE.

In a challenge to governmental action under the Free Exercise Clause, a determination must be made whether a regulation, neutral on its face, offends the constitutional requirement for governmental neutrality in its application and whether it unduly burdens the free exercise of religion; a balancing test is employed to determine whether government may regulate con-

duct prompted by religious belief or principle: 1) the belief, or conduct motivated by the belief, must be religious in nature; 2) the party complaining of a free exercise clause violation must show that the regulations under review impose a substantial burden on the exercise of religion; and 3) if the complaining party demonstrates that it is burdened by the regulations, the state must have a compelling state purpose for its law.

7. Civil Rights — Constitutional Law — Free Exercise Clause.

The provisions of the Civil Rights Act as applied to the employment of teachers in a church-run school do not constitute an undue burden on the free exercise of religion guaranteed by the First Amendment; the state's interest in eradicating employment discrimination renders the burden of the act upon a church's free exercise of religion a constitutionally permissible one (US Const, Am I; MCL 37.2202; MSA 3.548[202]).

8. Constitutional Law — Establishment Clause — Civil Rights Act.

A statute, to survive challenge under the Establishment Clause of the First Amendment, must meet the following tests: 1) the statute must have a secular legislative purpose; 2) its principal or primary effect must be one that neither advances nor inhibits religion; and 3) the statute must not foster an excessive government entanglement with religion; the Civil Rights Act has a secular purpose, does not have the primary effect of advancing or inhibiting religion, and does not foster excessive entanglement between religion and government (US Const, Am I; MCL 37.1101 *et seq.;* MSA 3.548[1101] *et seq.*).

*Cunningham, Mulder & Breese, P.C.* (by *Ronald J. Vander Veen*), for plaintiff.

*Wickett, Laudenslager & Smith, P.C.* (by *Robert W. Smith*), for defendant.

Before: Danhof, C.J., and MacKenzie and J. L. Banks,* JJ.

J. L. Banks, J. Defendant appeals by leave granted from an interlocutory order entered June 4, 1984, denying defendant's motion for acceler-

* Circuit judge, sitting on the Court of Appeals by assignment.

ated judgment under GCR 1963, 116.1(2), now MCR 2.116(C)(1).

Plaintiff filed this civil rights action under the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* alleging sex discrimination in defendant's hiring practices. Defendant school had an employment policy of foreclosing employment to women with preschool-age children according to doctrines grounded in defendant's religious beliefs. Defendant contends that it is not an employer under the act and therefore is not subject to regulation. Further, defendant contends that the act is unconstitutional as applied, in violation of the Free Exercise and Establishment Clauses of the United States Constitution, US Const, Am I.

Defendant is a nonprofit corporation organized and operating under the laws of this state and owned by the members of the Netherlands Reformed Congregation (NRC). Defendant was established in 1978 in Kalamazoo, Michigan, to instruct the young members of the congregation in accordance with the doctrine of the Netherlands Reformed Denomination. Its governing body is a school board elected by the members of the NRC. Final authority over religious matters raised in the administration of defendant rests with the Netherlands Reformed Congregation Consistory, the governing board of the NRC.

In August of 1980, plaintiff accepted a one-year contract to teach at defendant school. In so doing, plaintiff expressed agreement with the principles contained in Articles III and IV of the constitution and by-laws of defendant school. Those principles are:

> The basis on which the school is founded and managed is the infallible and unchangeable word of God as interpreted in the Forms [sic] of Unity

established by the Synod of Dordt in 1618 and 1619 and expressed in the following principles.

A) That all things have been created by the Triune God to the end that He may be glorified in and through them.

B) That God by his covenantal arrangement has appointed the parents to be responsible for the training of the child to the end that God and his [sic] glory should be central and supreme in our lives.

C) That the training of the child should be continued under the parents' responsible supervision in the school that carries out the basic God-honoring, God-centered program begun in the home.

At the end of the 1980-81 school year, plaintiff was offered and accepted a one-year contract for the 1981-82 school year. She suspected that she was pregnant when she met with the board in October of 1981 to discuss the contract. Her pregnancy was conclusively established by her physician later that month. At an unspecified time during that school year, plaintiff noted that Jackie Marcus, the principal of defendant school, was dismissed because she had a baby. Plaintiff claims that this was the first time she became aware of defendant's policy.

On March 1, 1982, after a request from the school board, the NRC Consistory decided that the school should avoid hiring women with small children as full-time teachers whenever possible. The Consistory noted the church's teaching that a woman's place is in the home raising children and not in the work force, unless required by circumstances. The plaintiff was specifically informed of this policy and belief at a meeting with the school board in the presence of other teachers on March 18, 1982.

In April of 1982, the school board adopted a policy statement "not to hire on a full-time basis those women who have preschool-age children." The parties agree that the policy constitutes a bona fide tenet of defendant's owner's faith. However, the parties disagree that compliance with the belief is a bona fide occupational requirement which must be fulfilled to teach the students at defendant school.

In May of 1982, plaintiff met with members of the school board and was told that defendant would not have a position for her because she was pregnant and would have a small child, and her employment under those conditions would violate defendant's religious beliefs. Plaintiff worked until June 4, 1982, and gave birth to her child on June 7, 1982. Her employment was terminated at the end of the school year in June.

On October 31, 1983, plaintiff filed the instant action. Defendant then filed its motion for accelerated judgment pursuant to GCR 1963, 116.1(5), now MCR 2.116(C)(5), on the ground that plaintiff's claim was barred because the act as applied is contrary to defendant's First Amendment rights. US Const, Am I. Defendant's amended motion for accelerated judgment further alleged that the trial court lacked jurisdiction of the subject matter, pursuant to GCR 1963, 116.1(2), now MCR 2.116(C)(2).

The trial court denied defendant's motions, finding that defendant was an employer within the meaning of the act and ruling that any burden imposed by the act on defendant's free exercise of its religious beliefs was outweighed by the state's compelling interest in eradicating sex discrimination. Finally, the court ruled that application of the act did not violate the Establishment Clause because the amount of entanglement caused by

the act between defendant and the state was not "so great as to declare the statute unconstitutional."

Defendant first claims on appeal that the act reveals no affirmative intent by the Legislature to include defendant in the definition of "employer." Defendant also claims that compliance with its policy and belief is a bona fide occupational qualification and contends that it should be excused from liability because of this qualification, which it believes is analogous to federal cases decided under the bona fide occupational qualification exemption of Title VII of the Civil Rights Act of 1964. We find that defendant is in fact an employer within the meaning of the act and is subject to the act's prohibitions.

In reviewing a motion for accelerated judgment, courts must accept all well-pled allegations of the nonmoving party as true. *Kircos v Goodyear Tire & Rubber Co,* 108 Mich App 781, 783; 311 NW2d 139 (1981), lv den 414 Mich 971 (1982). A motion for accelerated judgment is proper only if no material factual dispute exists between the parties. *Kropff v City of Monroe,* 128 Mich App 450, 452; 340 NW2d 119 (1983). If a court engages in fact-finding when ruling on a motion for accelerated judgment, reversal is required. *Id.* When a jury trial has been requested, accelerated judgment should be granted only if, based on the undisputed facts, the trial court can properly conclude as a matter of law that a plaintiff's claim is barred. *Gojcaj v Moser,* 140 Mich App 828, 832; 366 NW2d 54 (1985); *Wallisch v Fosnaugh,* 126 Mich App 418, 424; 336 NW2d 923 (1983), lv den 418 Mich 871 (1983).

The act upon which this litigation rests states in pertinent part as follows:

(1) An employer shall not:

(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(c) Segregate, classify, *or otherwise discriminate against a person* on the basis of sex *with respect to a term, condition, or privilege of employment, including a benefit plan or system.* [Emphasis supplied. MCL 37.2202; MSA 3.548(202).]

For purposes of Article Two of the act, the term "employer" is defined as "a person who has 1 or more employees, and includes an agent of that person." MCL 37.2201(a); MSA 3.548(201)(a). The definitional section of the act defines "person":

(f) "Person" means an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, the state or a political subdivision of the state or an agency *of the state,* or *any other legal or commercial entity.* [Emphasis supplied. MCL 37.2103(f); MSA 3.548(103)(f).]

The parties agree that defendant is a nonprofit corporation organized and operating under state laws. Although the parties have not specifically identified it, we conclude that defendant would properly be considered an educational corporation

as defined by MCL 450.170; MSA 21.171. It is undisputed that the purpose of defendant school is to educate the children of the congregation.

We examine the language of the act keeping in mind certain rules of statutory construction as enunciated by Michigan courts.

> This Court's guiding principle of statutory interpretation is to determine and effectuate the intent of the Legislature. *Charpentier v Canteen Corp,* 105 Mich App 700, 704; 307 NW2d 704 (1981). To ascertain this intent, the Court must first review the specific language of the disputed provision, giving all terms their plain and ordinary meaning absent a contrary legislative intent. *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104, 110; 252 NW2d 818 (1977). When an ambiguity is found, resulting in alternative interpretations being possible, this Court may refer to any factors which may advance the most probable and reasonable legislative intention. *Charpentier, supra,* pp 704-705. [*Couture v General Motors Corp,* 125 Mich App 174, 177-178; 335 NW2d 668 (1983), lv den 418 Mich 884 (1983).]

See also *In re Certified Questions,* 416 Mich 558; 331 NW2d 456 (1982), and *State Bar of Michigan v Galloway,* 124 Mich App 271; 335 NW2d 475 (1983), aff'd 422 Mich 188; 369 NW2d 839 (1985).

Sex discrimination under the act has been defined as treatment of similarly situated individuals in different ways because of their sex. *Heath v Alma Plastics Co,* 121 Mich App 137, 141; 328 NW2d 598 (1982). Here, defendant admits that the religious belief and policy does not extend to men with small children.

We find the wording of the act to be clear and unambiguous, and in light of the broad definition of "employer" and the flat prohibition of sex discrimination in the act, we conclude from the act's

plain language that defendant would be included within its mandates. No express exemption for church-affiliated schools is contained in Articles One and Two of the act, even though they are expressly exempted in Articles Four and Five, which cover housing and student admissions.

Defendant next claims on appeal that the act, as applied here, violates its First Amendment right to free exercise of religion. The trial court, in balancing the state's interest in eradicating sex discrimination against the burden placed upon defendant's First Amendment free exercise rights, concluded that the First Amendment had not been violated.

We begin our analysis of this difficult question by delineating precisely what is and what is not at issue in this case. What *is* at issue is whether the prohibition against employment discrimination on the basis of sex imposed by the act impinges upon defendant employer's First Amendment right of free exercise of religion. What is *not* at issue are the rights of parents to guide the religious future and education of their children, see *Pierce v Society of the Sisters of the Holy Names of Jesus and Mary,* 268 US 510; 45 S Ct 571; 69 L Ed 1070 (1925), the First Amendment right to express, transmit, and receive ideas, see *West Virginia Bd of Ed v Barnette,* 319 US 624; 63 S Ct 1178; 87 L Ed 1628 (1943), or the liberty to impart and receive religion, see *Cantwell v Connecticut,* 310 US 296, 307; 60 S Ct 900; 84 L Ed 1213 (1940); *Widmar v Vincent,* 454 US 263; 102 S Ct 269; 70 L Ed 2d 440 (1981). The latter claims are distinct and separate, in the nature of Fourteenth Amendment claims regarding the interests of parents. See *Sheridan Rd Baptist Church v Dep't of Ed,* 426 Mich 462, 487-488; 396 NW2d 373 (1986), reh den 427 Mich 1202 (1986) (Opinion of Justice BOYLE).

No such individual claims have been advanced in the instant case.

The Free Exercise Clause constitutes an absolute prohibition against governmental regulation of religious beliefs. *Wisconsin v Yoder,* 406 US 205, 219; 92 S Ct 1526; 32 L Ed 2d 15 (1972); *Sherbert v Verner,* 374 US 398, 402; 83 S Ct 1790; 10 L Ed 2d 965 (1963). Nevertheless, governmental regulation may lawfully impose an incidental burden on otherwise protected religious conduct. See *Yoder, supra,* p 403. See also *Dep't of Social Services v Emmanuel Baptist Pre-School,* 150 Mich App 254, 262; 388 NW2d 326 (1986). As stated by Chief Justice, then-Justice, Rehnquist in *Ohio Civil Rights Comm v Dayton Christian Schools, Inc,* 477 US —; 106 S Ct 2718; 91 L Ed 2d 512 (1986), reversing *Dayton Christian Schools, Inc v Ohio Civil Rights Comm,* 766 F2d 932 (CA 6, 1985), on remand 802 F2d 457 (CA 6, 1986), "[e]ven religious schools cannot claim to be wholly free from some state regulation."

In a challenge to governmental action under the Free Exercise Clause, a determination must be made whether a regulation, neutral on its face, offends the constitutional requirement for governmental neutrality in its application and whether it unduly burdens the free exercise of religion. *Wisconsin v Yoder,* 406 US 220.

A balancing test is employed to determine whether government may regulate conduct prompted by religious belief or principle. *Yoder, supra,* 406 US 221; *Sherbert, supra,* 374 US 403, 406. First, the belief, or conduct motivated by the belief, must be religious in nature. Second, the party complaining of a free exercise clause violation must show that the regulations under review impose a substantial burden on the exercise of religion. Third, if the complaining party demon-

strates that it is burdened by the regulations, the state must have a compelling state purpose for its laws. Relevant to this prong is an inquiry into whether there exists a less restrictive alternative to the regulation. *Sherbert, supra,* 374 US 403-407. [*Dep't of Social Services v Emmanuel Baptist Pre-School, supra,* p 262.]

In the instant case, the first and second prongs of the *Sherbert* test are relatively easily applied. It is undisputed that defendant's policy of not employing on a full-time basis women with preschool-age children is motivated by its belief that a woman's place is in the home raising children. Moreover, we accept defendant's claim that the Civil Rights Act's prohibition against employment discrimination on the basis of sex has an effect on this belief.

We are not persuaded, however, that the provisions of the act constitute an undue burden on defendant's religious beliefs. Statutes or regulations which unduly interfere with an individual's religious belief generally present the individual with a "hard choice." See *Thomas v Review Bd of Indiana Employment Security Division,* 450 US 707, 717; 101 S Ct 1425; 67 L Ed 2d 624 (1981); *Sherbert, supra,* 374 US 417 (concurring opinion of Justice Stewart). Here, the act does not, by its own terms, put defendant to such a "hard choice." The act provides that an employer may apply for an exemption from its provisions " . . . on the basis that religion . . . is a bona fide occupational qualification reasonably necessary to the normal operation of the business or enterprise." MCL 37.2208; MSA 3.548(208). Although defendant contends that its religious belief constitutes a bona fide occupational qualification, defendant has not applied to the commission for such an exemption. Defendant

thus seeks to have the statute declared unconstitutional as it applies to defendant without having first availed itself of the statute's available safeguards. Compare *Emmanuel Baptist Pre-School, supra,* pp 265-266.

Neither has defendant made a showing that it has reviewed plaintiff's case in light of its own policies. The record on appeal indicates that the NRC Consistory decided on March 1, 1982, that the school should avoid hiring women with small children as full-time teachers *whenever possible,* noting the church's teaching that a woman's place is in the home raising children, and not in the work force *unless required by circumstances.* It would appear that defendant's own policies may provide for certain exceptions which might apply to plaintiff.

Just as ending employment discrimination is a compelling state interest, see, e.g., Const 1963, art 1, § 2, elimination of discrimination on the basis of sex is a compelling state interest. *Roberts v United States Jaycees,* 468 US 609, 623-624; 104 S Ct 3244; 82 L Ed 2d 462 (1984). The act is expressly designed to further these purposes. By providing a private, civil remedy for discriminatory conduct, the act employs the least intrusive means to further that interest. Thus, we conclude that the state's interest in eradicating employment discrimination renders the burden upon defendant's free exercise of religion a constitutionally permissible one.

Finally, defendant claims that the act, as applied here, violates the Establishment Clause of the First Amendment. The principles which have been developed and applied in Establishment Clause challenges were articulated in *Lemon v Kurtzman,* 403 US 602, 612-613; 91 S Ct 2105; 29 L Ed 2d 745 (1971):

Every analysis in this area must begin with consideration of the cumulative criteria developed by the Court over many years. Three such tests may be gleaned from our cases. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Education v Allen,* 392 US 236, 243; 88 S Ct 1923; 20 L Ed 2d 1060, 1065 (1968); finally, the statute must not foster "an excessive government entanglement with religion."

Defendant concedes that the Civil Rights Act has a secular purpose and does not have the primary effect of advancing or inhibiting religion. Thus, resolution of this issue depends upon whether the act fosters excessive entanglement between religion and government.

We perceive no such excessive entanglement. The act constitutes a restriction or a penalty upon certain hiring practices by providing a statutory right to those who are discriminated against to sue for money damages. Unlike the statutory scheme at issue in *Dayton Christian Schools, supra,* a private action under the act does not contemplate state agency investigation which would give rise to ongoing interference with the religious practices of the church. Nor would a judgment in an employee's civil rights action result in any ongoing scrutiny of defendant's operations. A court's award of monetary damages to civil rights plaintiff does not amount to continuous supervision of the kind sought to be avoided in *Dayton Christian Schools.* The trial court must merely determine whether discrimination occurred and the amount of damages suffered by plaintiff. Accordingly, we do not believe that the act represents an abridgment of defendant's rights under the Establishment Clause.

This Court and others have examined questions concerning the First Amendment Free Exercise and Establishment Clauses and have decided that certain prohibited activities did not constitute an undue burden upon a religious organization, nor an excessive entanglement in their affairs. In *Dep't of Social Services v Emmanuel Baptist Pre-School, supra,* a panel of this Court found that a restriction imposed upon the method of corporal discipline used in the preschool was not an undue burden on the defendant's exercise of religious freedom, despite the defendant's belief in a literal interpretation of a biblical admonition. In *Dolter v Wahlert High School,* 483 F Supp 266 (ND Iowa, 1980), a former sectarian school teacher alleged that her termination from employment after she became pregnant while being single constituted sex discrimination. The federal district court found that assertion of jurisdiction over that claim would not entail excessive entanglement in the religious mission of the school and would not violate the First Amendment to the Constitution.

In *Dayton Christian Schools, supra,* a pregnant teacher was told that her employment contract would not be renewed because of Dayton's religious doctrine that mothers should stay home with their preschool-age children. A complaint was filed with the Ohio Civil Rights Commission under a statute similar to that in question here. Although the Sixth Circuit Court of Appeals dismissed plaintiff's complaint, finding that the Ohio statute violated First Amendment guarantees, the United States Supreme Court reversed, albeit on procedural grounds. While the Supreme Court's reversal was based on the federal abstention doctrine and did not reach the merits of the controversy, the Court did observe that "[w]e have no doubt that the elimination of prohibited sex discrimination is

a sufficiently important state interest to bring the present case within the ambit of the cited authorities." *Dayton Christian Schools, supra,* 91 L Ed 2d 522.

Based on the record presented, therefore, it is not clear to us that defendant has availed itself of all of the safeguards provided by the act to resolve just such a question as is before this Court. Notwithstanding even this consideration, we are not satisfied that the burden placed on the defendant by the act is so great that it outweighs the state's interest in eliminating sex discrimination to which the act is addressed. The entanglement between defendant's religious liberties and the state's legitimate interests do not seem to be greater here than those which have been approved in other cases by this Court and others. The decision of the trial court is affirmed. No costs, a question of public importance being involved.