PORTH v ROMAN CATHOLIC DIOCESE OF KALAMAZOO

Docket No. 165804. Submitted November 1, 1994, at Grand Rapids. Decided April 3, 1995, at 10:20 A.M.

Judith Porth brought an action in the Kalamazoo Circuit Court against the Roman Catholic Diocese of Kalamazoo and others, alleging that the defendants' refusal to renew her teaching contract as a fourth and fifth grade teacher at the defendants' St. Mary's Parish School in Paw Paw, on the basis that she is not a Catholic, constituted employment discrimination based upon religion in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* The court, Donald M. Goodwillie, J., granted summary disposition for the defendants on the basis of the Free Exercise Clause of the First Amendment of the United States Constitution. The plaintiff appealed.

The Court of Appeals *held:*

1. By operation of the Supremacy Clause, US Const, art VI, § 2, the Religious Freedom Restoration Act of 1993, 42 USC 2000bb *et seq.*, bars application of the Civil Rights Act to the defendants' conduct. The state does not possess a compelling state interest in regulating the religious discrimination at issue and the burden of such regulation is substantial.

2. Although the Civil Rights Act applies to church-operated schools, under the facts of this case the Religious Freedom Restoration Act of 1993 is controlling. Pursuant to the federal act, government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. Application of a strict scrutiny test in this case mandates the conclusion that the state does not possess a compelling interest in prohibiting religious discrimination in the employment of teachers in church-operated schools.

Affirmed.

REFERENCES

Am Jur 2d, Civil Rights § 203; Constitutional Law § 473.
See ALR Index under Constitutional Law; Religion and Religious Societies.

MURPHY, P.J., concurring, stated that strict scrutiny is the proper standard of review of the plaintiff's free exercise of religion claim and it is not necessary to consider the application of the Religious Freedom Restoration Act of 1993 to the present case. Section 202(1)(a) of the Civil Rights Act, MCL 37.2202(1)(a); MSA 3.548(202)(1)(a), cannot withstand strict scrutiny in this case because it is not the least drastic means to achieve the state's interest in prohibiting discrimination. Section 202(1)(a), as applied to the defendants here, would be unconstitutional because it violates the defendants' First Amendment right to the free exercise of religion.

1. CONSTITUTIONAL LAW — FUNDAMENTAL FREEDOMS — RELIGIOUS LIBERTY — COMPELLING INTEREST TEST.

The courts have a firmly rooted tradition of applying a compelling interest test to the regulation of religious liberty, a fundamental freedom.

2. CONSTITUTIONAL LAW — RELIGIOUS LIBERTY — COMPELLING GOVERNMENTAL INTEREST.

Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest (42 USC 2000bb-1).

3. CONSTITUTIONAL LAW — RELIGIOUS LIBERTY — EMPLOYMENT DISCRIMINATION — CHURCH-OPERATED SCHOOLS.

Michigan does not possess a compelling interest in prohibiting religious discrimination in the employment of teachers in church-operated schools; such state regulation would substantially burden the mission and function of religious schools.

*Deming, Hughey, Lewis, Allen & Chapman, P.C.* (by *Ross E. Chapman* and *Richard M. Hughey, Jr.*), for the plaintiff.

*Foster, Swift, Collins & Smith, P.C.* (by *William R. Schulz*), for the defendants.

Before: MURPHY, P.J., and GRIFFIN and W. A. CRANE,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

GRIFFIN, J. In this case of admitted employment discrimination based upon religion, we are called upon to address a conflict between the free exercise of religion and the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* We resolve this conflict in favor of religious liberty. We hold that the Religious Freedom Restoration Act of 1993, 42 USC 2000bb *et seq.*, bars application of Michigan's Civil Rights Act to defendants' conduct.

I

Plaintiff is a Protestant and the former fourth/fifth grade teacher at defendants' St. Mary's Parish School in Paw Paw. In April 1991, defendants advised plaintiff that her contract to teach would not be renewed for the 1991-92 school year because she was not a Catholic. The nonrenewal occurred consistent with a new policy of the school to employ only Catholics as teachers.

Plaintiff contends that her primary obligation as a teacher at St. Mary's was to teach the secular subjects of reading, English, mathematics, science, and social studies. However, plaintiff acknowledges that as a fourth/fifth grade teacher, she led her class in daily prayer, assisted students in preparing for Friday mass, selected the child readers for mass, attended mass, and utilized the Bible in her classroom.

Plaintiff filed the present action alleging that defendants' refusal to renew her teaching contract constituted employment discrimination based upon religion in violation of Michigan's Civil Rights Act. The circuit court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(10), finding no genuine issue of material fact and that defendants were entitled to judgment as a matter of law. The lower court's ruling was based

upon the Free Exercise Clause of the United States Constitution, US Const, Am I. The lower court also found plaintiff's claim barred by the "ministerial exception"[1] to the civil rights law. See *Assemany v Archdiocese of Detroit,* 173 Mich App 752; 434 NW2d 233 (1988); *Rayburn v General Conference of Seventh-Day Adventists,* 772 F2d 1164, 1169 (CA 4, 1985), cert den 478 US 1020 (1986). We affirm on the ground that the state does not possess a compelling interest in regulating the religious discrimination at issue.

II

Plaintiff does not bring the present action under the federal Civil Rights Act of 1964, 42 USC 2000e *et seq.* It is clear that by operation of the express exemption for religious schools, plaintiff would not have a cause of action under the federal Civil Rights Act of 1964. Specifically, § 703(e) of the Civil Rights Act of 1964, 42 USC 2000e-2(e)(2), provides:

> [I]t shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society.

Michigan's Civil Rights Act does not contain a

---

[1] We question, but do not decide, the applicability of the "ministerial exception." For purposes of defendants' motion for summary disposition, we accept plaintiff's factual assertion that her primary duties were secular in nature.

similar exemption for religious schools. The Michigan act broadly provides the following:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202; MSA 3.548(202).]

Plaintiff argues that in the absence of an exemption, the Michigan Civil Rights Act applies to church-operated schools. We agree with plaintiff's argument of statutory construction but hold that under the present facts, the federal Religious Freedom Restoration Act of 1993 is controlling.

III

The First Amendment of the United States Constitution, which is applicable to the states pursuant to the Fourteenth Amendment, US Const, Am XIV, *Cantwell v Connecticut,* 310 US 296; 60 S Ct 900; 84 L Ed 1213 (1940), provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Our Michigan Constitution also contains a Free Exercise Clause, Const 1963, art 1, § 4. See, generally, *Alexander v Bartlett,* 14 Mich App 177, 181; 165 NW2d 445 (1968).

Recently, the Michigan Supreme Court held that state-mandated teacher certification requirements violate the Free Exercise Clause when applied to families who practice home schooling for religious reasons. *People v DeJonge (After Remand),* 442 Mich 266; 501 NW2d 127 (1993). We find the

*DeJonge* plurality opinion by Justice RILEY to be persuasive and hereby adopt its analysis as our own.

The First Amendment guarantee of religious liberty is one of our most fundamental freedoms. As noted by Justice RILEY, no other right was more precious to our founding fathers than the right to religious freedom:

> The Founding Fathers then reserved special protection for religious liberty as a fundamental freedom in the First Amendment of the constitution. This fortification of the right to the free exercise of religion was heralded as one of the Bill of Rights' most important achievements. Indeed, Jefferson proclaimed that "[n]o provision in our constitution ought to be dearer to man than that which protects the rights of conscience against the enterprises of the civil authority." [*DeJonge, supra* at 278.]

Because religious liberty is a fundamental freedom, our courts have a firmly rooted tradition of applying a compelling interest test to its regulation. In this regard, we concur with the barrage of criticisms of *Employment Div, Dep't of Human Resources v Smith,* 494 US 872; 110 S Ct 1595; 108 L Ed 2d 876 (1990). In *DeJonge, supra* at 279, n 27, our Michigan Supreme Court noted a portion of these criticisms:

> We are not unaware of the criticism generated in reaction to *Smith,* which held that the First Amendment does not bar the "application of a neutral, generally applicable law to religiously motivated" conduct unless the Free Exercise Clause is in "conjunction with other constitutional protections . . . ." *Smith, supra* at 881. See, e.g., Smith, *The rise and fall of religious freedom in constitutional discourse,* 140 U Penn L R 149, 231,

232, 233 (1991)(referring to *Smith, supra,* as "the virtual abandonment of the Free Exercise Clause," "reach[ing] a low point in modern constitutional protection under the Free Exercise Clause," "leav-[ing] the Free Exercise Clause without independent constitutional content and thus, for practical purposes, largely meaningless"); McConnell, *Religious freedom at a crossroads,* 59 U Chicago L R 115, 140 (1992) ("*Smith* converts a constitutionally explicit liberty into a nondiscrimination requirement, in violation of the most straightforward interpretation of the First Amendment text"); Laycock, *Summary and synthesis: The crisis in religious liberty,* 60 Geo Wash L R 841 (1992)(summarizing a symposium of ten articles and finding that "[n]o one in this symposium takes seriously the possibility that *Employment Div v Smith* might be defensible"). Nevertheless, this Court must follow the interpretation of the Free Exercise Clause in the prevailing opinions of the United States Supreme Court, "even though we may be in accord with the dissenting opinions in those cases." *People v Lechner,* 307 Mich 358, 360-361; 11 NW2d 918 (1943).

Recently, these concerns led Congress to enact the Religious Freedom Restoration Act of 1993, 42 USC 2000bb *et seq.*[2] At the present time, the federal act grants rights of religious liberty that are greater than those afforded by the federal constitution. Specifically, the Religious Freedom Restoration Act of 1993 restores, as a matter of federal law, the compelling interest test that was diluted by *Smith.* The act, which is applicable to the states pursuant to 42 USC 2000bb-2(1), provides, in pertinent part, the following:

(a) In general. Government shall not substan-

---

[2] The Religious Freedom Restoration Act of 1993 was enacted while the present appeal was pending. The act directs that it be applied retroactively. 42 USC 2000bb-3(a).

tially burden a person's exercise of religion even if
the burden results from a rule of general applica-
bility, except as provided in subsection (b) of this
section.

(b) Exception. Government may substantially
burden a person's exercise of religion only if it
demonstrates that application of the burden to the
person—

(1) is in furtherance of a compelling governmen-
tal interest; and

(2) is the least restrictive means of furthering
that compelling governmental interest. [42 USC
2000bb-1.]

We also note that the Michigan Supreme Court
in *DeJonge, supra* at 279-280, n 27, emphasized
our duty to apply independently to free exercise
claims our state constitutional guarantee:

On the other hand, we may certainly interpret
the Michigan Constitution as affording additional
protection to the free exercise of religion. How-
ever, because the ruling of *Smith, supra* at 881,
commands that strict scrutiny be applied in the
case at issue, we do not undertake to determine at
this time the extent of the Michigan Constitution's
protection of the free exercise of religion gener-
ally. *We do hold, however, that the Michigan
Constitution mandates that strict scrutiny as artic-
ulated in this opinion be applied in the instant
case. Alexander v Bartlett,* 14 Mich App 177, 181;
165 NW2d 445 (1968)(art 1, § 4 of the Michigan
Constitution " 'guarantees to every person the lib-
erty to worship God according to the dictates of his
own conscience' ").

With varied results, Michigan courts have al-
ways applied a strict scrutiny test to state regula-
tion of religious freedom. See, e.g., *Sheridan Road
Baptist Church v Dep't of Ed,* 426 Mich 462; 396
NW2d 373 (1986), cert den 481 US 1050 (1987),

*Dep't of Social Services v Emmanuel Baptist Pre-school,* 434 Mich 380; 455 NW2d 1 (1990), *DeJonge, supra, Fisher v Fisher,* 118 Mich App 227, 231-232; 324 NW2d 582 (1982), and *McLeod v Providence Christian School,* 160 Mich App 333; 408 NW2d 146 (1987). Further, the educational value of religion is expressly recognized in our state constitution: "Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." Const 1963, art 8, § 1. In light of this background, we view the concurring opinion in *Smith* by Justice O'Connor as more consistent with Michigan's constitutional jurisprudence than the majority opinion in *Smith.*

Nevertheless, in the present case it is not necessary for us to decide the breadth of our state constitutional guarantee because the Religious Freedom Restoration Act of 1993 clearly grants rights that are at least as great as those afforded by our state constitution. Additionally, defendants have not relied upon our state constitution either in the lower court or on appeal.

IV

After applying a strict scrutiny test, we conclude that the state does not possess a compelling interest in prohibiting religious discrimination in the employment of teachers in church-operated schools. In previous parochial-school cases, the United States Supreme Court has "recognized the critical and unique role of the teacher in fulfilling the mission of a church-operated school." *NLRB v Catholic Bishop of Chicago,* 440 US 490, 501; 99 S Ct 1313; 59 L Ed 2d 533 (1979). Further, in holding that religious schools are not subject to the National Labor Relations Act, 29 USC 151 *et seq.,* the

United States Supreme Court has emphasized that religion pervades all aspects of a church-operated school:

> What was said of the schools in *Lemon v Kurtzman,* 403 US 602, 617 [91 S Ct 2105; 29 L Ed 2d 745] (1971), is true of the schools in this case: "Religious authority necessarily pervades the school system." The key role played by teachers in such a school system has been the predicate for our conclusions that governmental aid channeled through teachers creates an impermissible risk of excessive governmental entanglement in the affairs of the church-operated schools. For example, in *Lemon, supra,* at 617, . . . we wrote:
> "In terms of potential for involving some aspect of faith or morals in secular subjects, a textbook's content is ascertainable, but a teacher's handling of a subject is not. We cannot ignore the danger that a teacher under religious control and discipline poses to the separation of the religious from the purely secular aspects of pre-college education. The conflict of functions inheres in the situation."
> Only recently we again noted the importance of the teacher's function in a church school: "Whether the subject is 'remedial reading,' 'advanced reading,' or simply 'reading,' a teacher remains a teacher, and the danger that religious doctrine will become intertwined with secular instruction persists." *Meek v Pittenger,* 421 US 349, 370 [95 S Ct 1753; 44 L Ed 2d 217] (1975). Cf. *Wolman v Walter,* 433 US 229, 244 [97 S Ct 2593; 53 L Ed 2d 714] (1977). Good intentions by government—or third parties—can surely no more avoid entanglement with the religious mission of the school in the setting of mandatory collective bargaining than in the well-motivated legislative efforts consented to by the church-operated schools which we found unacceptable in *Lemon, Meek,* and *Wolman.* [*NLRB, supra* at 501-502.]

The facts of the present case support the above

observations concerning the pervasive religious authority in teaching, even secular subjects, at church-operated schools. The various religious duties that plaintiff admits performing include leading her students in prayer, preparing her students for mass, selecting child readers for mass, attending mass, and utilizing the Bible in the classroom. We find these teaching responsibilities to be inexorably intertwined with the primary function of defendants' school, which is the education of its students consistent with the Catholic faith. Imposition of religious discrimination laws to teaching positions in religious schools would detrimentally affect the operation of such schools. The state simply has no interest, and certainly no compelling interest, in requiring church-operated schools to employ teachers of other faiths or of no faith. Such state regulation would substantially burden the mission and function of religious schools. This burden was recognized and exempted by the United States Congress, but not by the Michigan Legislature.

In the present case, the burden of state regulation is substantial while the state's interest is less than compelling. Accordingly, we hold that by operation of the Supremacy Clause of the United States Constitution, US Const, art VI, § 2, the Religious Freedom Restoration Act of 1993 bars application of the Michigan Civil Rights Act to defendants' conduct.

Affirmed.

W. A. CRANE, J., concurred.

MURPHY, P.J. *(concurring)*. I agree that summary disposition was appropriately granted to defendants, but write separately to explain how my analysis differs from that utilized by the majority.

The majority holding is based on the Religious Freedom Restoration Act of 1993 (RFRA), 42 USC 2000bb *et seq.*, enacted after this appeal was filed and never argued by the parties. Although the constitutionality of the RFRA is not before us today, I question Congress' authority to legislate the standard of judicial review applicable to a free exercise of religion claim.[1] Unlike the majority, I find it unnecessary to consider the RFRA's application to the present case because I would hold that strict scrutiny is the proper standard of review of plaintiff's free exercise claim as established by the United States Supreme Court and the Michigan Supreme Court. *Sherbert v Verner,* 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963); *Dep't of Social Services v Emmanuel Baptist Preschool,* 434 Mich 380, 391-396, 430; 455 NW2d 1 (1990) (CAVANAGH, J., concurring and GRIFFIN, J., concurring in part).

It is argued that the United States Supreme Court's decision in *Employment Div, Dep't of Human Resources v Smith,* 494 US 872; 110 S Ct 1595; 108 L Ed 2d 876 (1990), would bar application of the strict scrutiny standard of review in analyzing a conflict between the Free Exercise

---

[1] I echo the concerns of the United States Court of Appeals for the Seventh Circuit in *Canedy v Boardman,* 16 F3d 183, 186, n 2 (CA 7, 1994), where the court stated:

> The constitutionality of [the Religious Freedom Restoration Act of 1993]—surely not before us here—raises a number of questions involving the extent of Congress's powers under Section 5 of the Fourteenth Amendment. *See generally Katzenbach v Morgan,* 384 US 641; 86 S Ct 1717; 16 L Ed 2d 828 (1966); Robert A. Burt, *Miranda and Title II: A Morganic Marriage,* 1969 S Ct Rev 81; Archibald Cox, *The Role of Congress in Constitutional Determinations,* 40 U Cinn L Rev 199 (1971); William Cohen, *Congressional Power to Interpret Due Process and Equal Protection,* 27 Stan L Rev 603 (1975); Comment, *When the Supreme Court Restricts Constitutional Rights, Can Congress Save Us? An Examination of Section 5 of the Fourteenth Amendment,* 141 U Pa L Rev 1029 (1993).

Clause and the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, in the context of the employment relationship of a teacher in a Catholic school.[2] However, I do not find the Supreme Court's holding in *Smith* to be applicable to plaintiff's free exercise of religion claim in this case. Instead, I agree with the United States Court of Appeals for the Ninth Circuit, which has held that *Smith* applies only to laws that punish criminal conduct. See *American Friends Service Committee Corp v Thornburgh,* 961 F2d 1405, 1407 (CA 9, 1991); *NLRB v Hanna Boys Center,* 940 F2d 1295, 1305 (CA 9, 1991). See also *Alabama & Coushatta Tribes v Trustees of the Big Sandy Independent School Dist,* 817 F Supp 1319 (ED Tex, 1993). In this case, the law whose constitutionality is in question, § 202(1)(a) of the Civil Rights Act, MCL 37.2202(1)(a); MSA 3.548(202)(1)(a), is not a criminal law, but a civil law, and, thus, *Smith* does not apply.

Because *Smith* is inapplicable to the present case, I would review plaintiff's free exercise challenge under the traditional strict scrutiny standard. *Sherbert, supra; Emmanuel, supra.* The strict scrutiny standard requires the state to prove that its actions are justified by a compelling interest and that there are no less drastic means to achieve that interest. *Emmanuel, supra,* 394-396. Section 202(1)(a) of the Civil Rights Act cannot withstand strict scrutiny in this case because it is not the least drastic means to achieve the state's interest in prohibiting discrimination. There is a less drastic means to achieve the state's interest in preventing discrimination, as exemplified by fed-

---

[2] *Smith* was a case dealing with a criminal statute and essentially held that the Free Exercise Clause, US Const, Am I, does not bar the application of a neutral generally applicable law to religiously motivated conduct unless the Free Exercise Clause is in conjunction with other constitutional protections.

eral law as set forth in the Civil Rights Act of 1964, which provides the following specific exemption for religious schools:

> [I]t shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society. [42 USC 2000e-2(e)(2).]

As applied to defendants in this case, MCL 37.2202(1)(a); MSA 3.548(202)(1)(a) would be unconstitutional because it violates defendants' First Amendment right to the free exercise of religion. However, the Legislature could remedy the constitutional defect by providing a specific exemption for religious schools similar to that found in the Civil Rights Act of 1964, 42 USC 2000e-2(e)(2). Such an exemption would permit the state to advance its interest in prohibiting religious discrimination without unconstitutionally interfering with defendants' First Amendment right to the free exercise of religion.

For the reasons stated above, I concur in affirming the trial court's grant of summary disposition for defendants.