The Honorable Nick Wilson State Senator P.O. Box 525 Pocahontas, Arkansas 72455-0525
Dear Senator Wilson:
You have requested an Attorney General opinion on the following question:
 Can a contract be entered into between a public school district and a private parochial school district under which the parochial school would provide bus service for the public school children to and from public school and to a day care center. In exchange for this service, the public school would transport parochial school children from their homes to school?
I must note initially that I have not been provided with a copy of the contract in question. The legality of any particular contract will depend upon its specific terms and the factual manner in which it is carried out. Because I do not have this information, I cannot opine definitively with regard to the specific contract about which you have inquired.
Nevertheless, from the factual information you have provided concerning this contract, it appears that the aspect of the contract providing for the parochial school to transport public school students clearly would be legally permissible. It further appears that although the aspect of the arrangement under which the public school would transport parochial students does raise constitutional concerns, this element of the contract, as explained more fully below, would not offend the United States Constitution or the Arkansas Constitution.
Public schools are authorized to exercise wide discretion in arranging for the transportation of their students. A.C.A. § 6-19-102 states in pertinent part:
 (a) The board of directors of each school district in the state is authorized to purchase vehicles and otherwise provide means for transporting pupils to and from school, when necessary.
 (b) To this end it may hire or purchase such school buses or other vehicles and hire persons to operate them, or make such other arrangements as it may deem best, affording safe and convenient transportation to the pupils, and the board may pay for all such property or services out of the funds of the district.
A.C.A. § 6-19-102(a) and (b) (emphasis added).
The unambiguous language of this provision draws wide parameters within which school districts may arrange for the transportation of their students. This liberal grant of authority is consistent with the wide discretion that schools are given, generally, and that the Arkansas Supreme Court has recognized, with regard to the conduct of school in their districts. See, e.g., King v. Cochran, 419 F.Supp. 54 (W.D. Ark. 1976), aff'd 551 F.2d 1133; Safferstone v. Tucker, 235 Ark. 70,357 S.W.2d 3 (1962).
The general wide discretion granted to school districts is reflected in A.C.A. § 6-13-620, which states:
 The board of directors of each school district in the state shall be charged with the following powers and perform the following duties:
* * *
 (13) Do all other things necessary and lawful for the conduct of efficient free public schools in the district.
A.C.A. § 6-13-620(13).
The foregoing sources of law indicate that public school districts can contract with parochial schools for the transportation of public school students. I reiterate that whether a particular contract for transportation of public school students is legally permissible will turn largely on the specific facts surrounding that contract.
As indicated previously, the more important issue raised by the arrangement that you have described is a constitutional one. The specific constitutional concern is whether the use of public resources for the purpose of transporting parochial school students would constitute an unlawful establishment of religion by the government, in violation of the "establishment clause" of the First Amendment to the United States Constitution,[1] and in violation of Article 2, § 24 of the Arkansas Constitution.[2]
Although the Arkansas Supreme Court has not addressed the constitutionality of situations in which a public school provided transportation services to parochial school students, various other courts have done so. These courts have consistently upheld the use of public resources to provide transportation (or transportation funding) to parochial students in situations where the benefit of the transportation was neutral in nature and went primarily to the parochial student rather than to the parochial school.[3]
For example, in the seminal case on this issue, Everson v. Bd. of Educ.,330 U.S. 1 (1947), the U.S. Supreme Court upheld a New Jersey statute that authorized the use of public funds to reimburse the parents of parochial school children for the cost of the students' transportation to and from the parochial school. This aid was deemed to be neutral and non-religious in nature, in that it was not a direct funding of the school, and in that it applied equally to students of both parochial and public schools. Later, in Lemon v. Kurtzman, 403 U.S. 602 (1971), the court elaborated on this rationale as follows:
 Our decisions from Everson to Allen [Board of Education v. Allen, 392 U.S. 236, 243 (1968)] have permitted the States to provide church-related schools with secular, neutral, or nonideological services, facilities, or materials. Bus transportation, school lunches, public health services, and secular textbooks supplied in common to all students were not thought to offend the Establishment Clause.
403 U.S. at 616 (emphasis added). The Lemon Court set forth the following three-part test to determine whether the use of public funds to provide services to parochial schools violates the establishment clause: First, the arrangement must have a secular purpose. Second, it must have a "primary effect" that neither advances nor inhibits religion. Third, the administration of the arrangement must avoid excessive government entanglement with religion.[4]
Numerous state and lower federal courts, following the rationale ofEverson and Lemon with regard to the transportation issue, have upheld the use of public resources for the transportation of parochial school students. See, e.g., Felter v. Cape Girardeau School Dist.,810 F. Supp. 1062 (E.D. Mo. 1993) (upholding publicly funded transportation of handicapped student from parochial school to special classes at public school); Cromwell Property Owners Ass'n v. Toffolon, 495 F. Supp. 915
(D. Conn. 1979) (upholding state statute authorizing transportation of private school students); Springfield School Dist., Delaware Co. v. Dept.of Ed., 483 Pa. 539, 397 A.2d 1154, (1979), appeal dismissed,443 U.S. 901 (upholding state statute authorizing transportation of private school students); Americans United for Separation of Church and Statev. Paire, 359 F. Supp. 505 (D.N.H. 1973) (upholding state reimbursement of transportation fare to parochial students); West MorrisRegional Bd. of Educ. v. Sills, 58 N.J. 464, 279 A.2d 609 (1971), cert. denied 404 U.S. 986 (upholding state statute authorizing local districts to contract for transportation of private school students);Alexander v. Bartlett, 14 Mich. App. 177, 165 N.W.2d 445 (1968) (upholding state statute authorizing transportation of private school students); Honohan v. Holt, 17 Ohio Misc. 57,244 N.E.2d 537 (1968) (upholding state statute authorizing transportation of private school students);Snyder v. Town of Newton, 147 Conn. 374, 161 A.2d 770
(1960), appeal dismissed 365 U.S. 299
(upholding state statute authorizing transportation of private school students); Bd. of Educ. of Central School Dist. No. 1 of Towns ofBallston, Clifton Park and Charlton and Town of Glenville v. Allen,17 Misc. 2d 1080, 182 N.Y.S.2d 186 (1959) (upholding state statute authorizing transportation of private school students).
On the basis of these authorities, I conclude that it is constitutionally permissible for a public school district to contract for the transportation of parochial school students. Again, however, whether a particular contract for transportation of parochial school students is constitutionally permissible will turn largely on the specific facts surrounding that contract.
I must note that it could be argued that an arrangement such as you have described would be prohibited by Article 14, §§ 2 and 3 of the Arkansas Constitution, both of which prohibit the use of school funds for other districts or for non-school purposes. Although, as noted, additional facts of which I am unaware could change my conclusions, it is my opinion, based upon the facts that you have provided, that the arrangement would not violate these constitutional provisions. I base this conclusion on the fact that the arrangement you have described is contractual in nature, and you indicate that the funds will be spent in exchange for consideration that will serve an internal purpose of the school district.
As a final matter, it should be noted that any parochial school with whom a public school district contracts for transportation of public school students must comply with all applicable requirements of A.C.A. §§6-19-104 through -117, and A.C.A. § 27-51-1002, which address matters concerning the qualifications of bus drivers, and the operation and design of buses used to transport public school students. The parochial school must also comply with all regulations of the Department of Education concerning transportation matters.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] The "establishment clause" of the U.S. Constitution states: "Congress shall make no law respecting an establishment of religion. . . ." U.S. CONST., am. 1.
[2] Article 2, § 24 of the Arkansas Constitution states: "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can, of right, be compelled to attend, erect or support any place of worship; or to maintain any ministry against his consent. No human authority can, in any case or manner whatsoever, control or interfere with the right of conscience; and no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship above any other. ARK. CONST., art. 2, § 24.
[3] In cases where the primary benefit of the transportation aid went to the school, rather than to the student, the Court has held the arrangement to be unconstitutional. See, e.g., Wolman v. Walter,443 U.S. 229 (1977) (holding that state statute providing for the use of state funds to provide field trip transportation to private school students, where private school controlled timing, range, frequency, and destination of the trips, resulted in primary aid to school rather than to students, and was therefore unconstitutional).
[4] The three-part "Lemon test" has been criticized in recent years both by scholarly commentators and by members of the Court itself. Nevertheless, it has not been retracted by the Court and remains the standard for the evaluation of establishment clause claims.