*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0012p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MILLICENT P. HOLLINS,

         *Plaintiff-Appellant,*

    *v.*

METHODIST HEALTHCARE, INC., doing business as
Methodist University Hospital,

         *Defendant-Appellee.*

No. 05-6301

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-02805—Jon Phipps McCalla, District Judge.

Submitted: November 30, 2006

Decided and Filed: January 10, 2007

Before: DAUGHTREY and McKEAGUE, Circuit Judges; REEVES, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** David P. Jaqua, Jessica A. Neal, BUTLER, SNOW, O'MARA, STEVENS & CANNADA, Memphis, Tennessee, for Appellee. Millicent P. Hollins, Atlanta, Georgia, pro se.

    DAUGHTREY, J., delivered the opinion of the court, in which REEVES, D. J., joined. McKEAGUE, J. (p. 5), delivered a separate concurring opinion.

---

## OPINION

---

    MARTHA CRAIG DAUGHTREY, Circuit Judge. The plaintiff, Millicent Hollins, filed this action against her former employer, Methodist Healthcare, Inc., claiming that her termination from employment as a resident in the hospital's Clinical Pastoral Education program violated the Americans with Disabilities Act, 42 U.S.C. § 12101. On appeal, Hollins challenges the order of the district court dismissing her claim based on lack of subject matter jurisdiction under the constitutional "ministerial exception" to the enforcement of employment discrimination laws that is derived from the First Amendment's guarantee of religious freedom. *See Hollins v. Methodist*

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

*Healthcare, Inc.*, 379 F. Supp. 2d 907 (W.D. Tenn. 2005). We find no basis upon which to disturb the district court's decision and, therefore, we affirm.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The facts of this case are fully set out in the district court's opinion. In summary, the record establishes that the defendant operates Methodist Hospital in Memphis "in accordance with the Social Principles of The United Methodist Church" and is associated with the Conferences of the United Methodist Church, a clearly religious organization. The plaintiff was a resident in the hospital's clinical pastoral education program, which required her to initiate pastoral visits with patients and family members and to be on call during her non-working hours as a chaplain for all the Methodist health facilities in the Memphis area. Because the program was accredited by the Association of Clinical Pastoral Education, the hospital was required to sign a form agreeing, in essence, to adhere to the association's policy of non-discrimination on the basis of "race, gender, age, faith group, national origin, sexual orientation, or disability."

As the result of a psychiatric evaluation, Hollins was dismissed from the residency program because, according to her, she was "perceived as being a threat of harm to Defendant's workplace." After she filed suit under the ADA, the hospital responded with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), invoking the "ministerial exception" and contending that the district court lacked subject matter jurisdiction. Hollins argued in response that the defendant was not entitled to claim exemption from the ADA under the ministerial exception. In addition, she asserted that even if it were so entitled, the hospital had waived the right to rely on the ministerial exception as a defense to her ADA claim by seeking and obtaining accreditation from the Association of Clinical Pastoral Education, including the defendant's agreement to abide by the association's non-discrimination policy. The district court held that the defendant was entitled to rely on the exception and that it had not waived its right to invoke the exception. As a result, the court held that it lacked jurisdiction over the claim and dismissed the complaint. Hollins now appeals that ruling.

## II. *DISCUSSION*

We review *de novo* a district court's order of dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). In response to a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *See id.* In addition, unlike Rule 12(b)(6) analysis, under which the existence of genuine issues of material fact warrants denial of the motion to dismiss, "the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged." *Id.*

The ministerial exception, a doctrine rooted in the First Amendment's guarantees of religious freedom, precludes subject matter jurisdiction over claims involving the employment relationship between a religious institution and its ministerial employees, based on the institution's constitutional right to be free from judicial interference in the selection of those employees. *See generally Serbian E. Orthodox Diocese for the U.S. and Can. v. Milivojevich*, 426 U.S. 696 (1976); *Lewis v. Seventh-Day Adventists Lake Region Conference*, 978 F.2d 940 (6th Cir. 1992). Although the ministerial exception is often raised in response to employment discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e to 42 U.S.C. § 2000e-17 (2006), which specifically bars discrimination on the basis of religion, it has also been applied to claims under the ADA and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2006), as well as common law claims brought against a religious employer. *See, e.g.*, *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006) (applying ministerial exception to an ADEA claim); *Ogle v. Church of God*, 153 Fed. Appx. 371 (6th Cir. 2005) (common law claims); *Werft v. Desert Sw. Annual Conference of the United*

*Methodist Church*, 377 F.3d 1099 (9th Cir. 2004) (ADA claim); *Starkman v. Evans*, 198 F.3d 173 (5th Cir. 1999) (ADA claim); *Minker v. Balt. Annual Conference of United Methodist Church*, 894 F.2d 1354 (D.C. Cir. 1990) (ADEA claim); *Hutchison v. Thomas*, 789 F.2d 392 (6th Cir. 1986) (common law claims).

In order for the ministerial exception to bar an employment discrimination claim, the employer must be a religious institution and the employee must have been a ministerial employee. But, in order to invoke the exception, an employer need not be a traditional religious organization such as a church, diocese, or synagogue, or an entity operated by a traditional religious organization. Examining cases decided in all of the circuit courts, the Fourth Circuit found that the exception has been applied to claims against religiously affiliated schools, corporations, and hospitals by courts ruling that they come within the meaning of a "religious institution." *See Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 309-310 (4th Cir. 2004) Its investigation led the Fourth Circuit to conclude that a religiously affiliated entity is considered "a 'religious institution' for purposes of the ministerial exception whenever that entity's mission is marked by clear or obvious religious characteristics." *Id.* at 310 (finding a predominantly Jewish nursing home to be a "religious employer" subject to the ministerial exception).

In this circuit, we have thus far applied the ministerial exception only to ordained ministers. However, other circuits have extended the doctrine to bar employment discrimination claims brought by other employees of a religious institution. These courts have considered a particular employee to be a "minister" for purposes of the ministerial exception based on the function of the plaintiff's employment position rather than the fact of ordination. *See Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1168 (4th Cir. 1985). As a general rule, the ministerial exception will be invoked if "the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship." *Id.* at 1169 (quoting Bruce N. Bagni, *Discrimination in the Name of the Lord: A Critical Evaluation of Discrimination by Religious Organizations*, 79 COLUM. L. REV. 1514, 1545 (1979)). *See*, *e.g.*, *id.* at 1168 (applying ministerial exception to associate in pastoral care); *E.E.O.C. v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795 (4th Cir. 2000) (applying ministerial exception to director of music); *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698 (7th Cir. 2003) (applying ministerial exception to the Hispanic Communications Director for the Diocese of Chicago). We agree with this extension of the rule beyond its application to ordained ministers and hold that it applies to the plaintiff in this case, given the pastoral role she filled at the hospital.

On appeal, Hollins argues that the ministerial exception should not have barred her claim, because Methodist Healthcare was not a "religious institution" and because she was not a "ministerial employee." In addition, she asserts that even if the exception applied to this employment relationship, the defendant had waived its right to claim the exception by seeking and obtaining accreditation from the Association of Clinical Pastoral Education, incident to which it represented that it did not – and would not – discriminate based on, among other things, disability. But, the district court found that the plaintiff failed to raise the first two issues, *Hollins*, 379 F. Supp. 2d at 912, and, therefore, they cannot be reviewed upon appeal. *See Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993). Hence, the dispositive issue before us is whether Methodist Healthcare has waived its First Amendment right to the ministerial exception.

As the district court noted, "it is well established that courts closely scrutinize waivers of constitutional rights, and 'indulge every reasonable presumption against a waiver.'" *Hollins*, 370 F. Supp. 2d at 912 (quoting *Sambo's Rests., Inc. v. City of Ann Arbor*, 663 F.2d 686, 690 (6th Cir. 1981) (internal quotation omitted). When First Amendment rights are at issue, "the evidence must be 'clear and compelling' that such rights were waived." *Sambo's Rests., Inc.*, 663 F.2d at 690 (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 145 (1967)). Moreover, the Supreme Court has

applied to civil litigation the standard for waiver in a criminal proceeding, *i.e.*, that the waiver must be "'voluntarily, intelligently, and knowingly' made." *Fuentes v. Shevin*, 407 U.S. 67, 94-95 (1972).

Given the presumption against waivers of constitutional rights and the heavy burden required to overcome that presumption, the district court found that the defendant "did not knowingly or voluntarily waive its constitutional right to be free from judicial interference with the selection of its ministers by seeking and obtaining . . . accreditation." *Hollins*, 379 F. Supp.2d at 912. Of course, as the court noted, the "alleged failure to adhere to the [accrediting agency's] nondiscrimination clauses might have some effect upon its accreditation by that agency." *Id.* Nevertheless, we have recognized that even when "the plaintiff alleges that the religious tribunal's decision was based on a misapplication of its own procedures and laws, the civil courts may not intervene." *Lewis*, 978 F.2d at 942-43. Hence, despite any sympathy we might have for the predicament in which the plaintiff allegedly found herself in this case – she purports to have been terminated on the basis of dream analysis – we are bound by our own precedent to hold that her claim cannot be maintained in federal court.

### III. *CONCLUSION*

For the reasons set out above, we AFFIRM the district court's judgment.

---

### CONCURRENCE

---

McKEAGUE, Circuit Judge, concurring.  I concur fully in the majority's opinion.  I write separately to point out that there is an open question whether a religious organization can waive the ministerial exception.  At least one circuit has held that "the ministerial exception . . . is not subject to waiver or estoppel." *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir.), *cert. denied*, 127 S. Ct. 190 (2006).  Given that Methodist Healthcare did not waive the exception under the facts of this case, the question of whether it could even do so is not squarely before us.