WEISHUHN v CATHOLIC DIOCESE OF LANSING

Docket No. 273117. Submitted April 1, 2008, at Detroit. Decided May 22, 2008, at 9:05 a.m.

Madeline Weishuhn brought an action in the Genesee Circuit Court against the Catholic Diocese of Lansing and St. Mary's Catholic Church, alleging violations of the Whistleblowers' Protection Act, MCL 15.361 et seq., and the Civil Rights Act, MCL 37.2101 et seq., in connection with the termination of her employment at St. Mary's, where she had taught mathematics and religion classes and performed other duties. The court, Archie L. Hayman, J., granted the defendants' motion for summary disposition of the claim asserting violation of the Whistleblowers' Protection Act and denied the defendants' motion for summary disposition of the claim alleging retaliatory termination under the Civil Rights Act. The defendants appealed by leave granted from the denial of the motion regarding the claim under the Civil Rights Act.

The Court of Appeals held:

1. The ministerial exception, which precludes subject-matter jurisdiction over claims involving the employment relationship between a religious institution and its ministerial employees, exists in Michigan. The ministerial exception has its roots in the Establishment Clause and the Free Exercise of Religion Clause of the First Amendment of the United States Constitution. The exception bars discrimination claims where religious employers employ or have employed plaintiffs with religious positions. Application of the exception is not inherently complex. It requires courts to determine only whether the resolution of a plaintiff's claim would limit a religious institution's right to choose who will perform particular spiritual functions. The exception does not apply to all employment decisions by religious institutions nor does it apply to all claims by ministers.

2. The trial court erred in holding that the motion under MCR 2.116(C)(4) for summary disposition of the claim under the Civil Rights Act, which asserted that the court lacked subject-matter jurisdiction over the claim because of the application of the ministerial exception, might create a question of fact for the jury. A determination that there is no genuine issue of material fact can

play a part in ruling on a motion for summary disposition under MCR 2.116(C)(4) and this may involve an evaluation of the factual elements of the case. However, this evaluation is for the trial court, not the jury, to make.

3. In determining whether the ministerial exception applies, courts must first determine whether the employer is a religious institution and next determine whether the employee is a ministerial employee. There is no question here that St. Mary's is a religious institution. The order denying the motion for summary disposition of the claim under the Civil Rights Act must be vacated and the matter must be remanded for a determination by the trial court whether the plaintiff was a ministerial employee. The claim must be dismissed if it is determined that the plaintiff was a ministerial employee, and proceedings as necessary for a trial must be scheduled if it is determined that the plaintiff was not a ministerial employee.

Vacated and remanded.

1. CONSTITUTIONAL LAW — MINISTERIAL EXCEPTION — ESTABLISHMENT OF RELIGION — FREE EXERCISE OF RELIGION.

Michigan allows the application of the ministerial exception, which precludes subject-matter jurisdiction by a court over claims involving the employment relationship between a religious institution and its ministerial employees where the resolution of the employee's claim would limit the religious institution's right to choose who will perform particular spiritual functions; however, the exception does not apply to all employment decisions by religious institutions or all claims by ministers.

2. MOTIONS AND ORDERS — SUBJECT-MATTER JURISDICTION — ISSUES OF MATERIAL FACT.

A determination that there is no genuine issue of material fact may play a part in a trial court's ruling on a motion for summary disposition that alleges that the court lacks jurisdiction of the subject matter; the determination regarding whether there is a genuine issue of material fact is for the trial court, not the jury, in regard to the motion for summary disposition (MCR 2.116[C][4]).

*Law Offices of Julie A. Gafkay, PLC* (by *Julie A. Gafkay* and *Sandra D. Hanshaw*), and *Joliat, Tosto, McCormick & Bade, PLC* (by *Michael T. Joliat*), for the plaintiff.

*Foster, Swift, Collins & Smith, P.C.* (by *Thomas R. Meagher* and *Stephen J. Rhodes*), for the defendants.

Before: ZAHRA, P.J., and WHITBECK and BECKERING, JJ.

PER CURIAM. Defendants Catholic Diocese of Lansing (the Diocese) and St. Mary's Catholic Church (St. Mary's) appeal by leave granted the trial court's order denying their motion for summary disposition in this Civil Rights Act retaliatory-termination case. We vacate and remand for further proceedings.

### I. OVERVIEW

This case involves the "ministerial exception." The ministerial exception is a nonstatutory, constitutionally compelled exception to the application of employment-discrimination and civil rights statutes to religious institutions and their "ministerial" employees. The ministerial exception has its roots in the Establishment and Free Exercise of Religion clauses of the First Amendment and generally bars inquiry into a religious institution's underlying motivation for a contested employment decision.

We first conclude that the ministerial exception exists in Michigan. We next conclude that the trial court erred when it concluded that the motion before it— which sought summary disposition of plaintiff Madeline Weishuhn's retaliatory-termination claim on the ground that the trial court lacked jurisdiction of the subject matter because of the ministerial exception— might create a question for the jury. We therefore remand to the trial court for an analysis of, and conclusions regarding, whether Weishuhn was a "ministerial" employee. We direct the trial court, in undertaking that

analysis and reaching those conclusions, to focus on the totality of Weishuhn's duties and responsibilities, her position, and her function.

## II. BASIC FACTS AND PROCEDURAL HISTORY

### A. WEISHUHN'S BACKGROUND

In 1992, Weishuhn obtained her Bachelor of Science degree in elementary education from the University of Michigan. For more than 10 years, until 1999, Weishuhn worked for St. Charles and Helena Catholic Church in Clio, Michigan. She was that church's director of religious education for its "parish religious ed[ucation] program" for approximately eight years. In 2001, she obtained her master's degree in teaching from Marygrove College.

### B. WEISHUHN'S EMPLOYMENT AND DUTIES AT ST. MARY'S

In August 1999, Weishuhn began teaching at St. Mary's Elementary School in Mount Morris, Michigan. Weishuhn taught mathematics for the fifth through the eighth grades and carried out religious responsibilities that included teaching religion for the sixth through the eighth grades. Initially, Weishuhn taught two mathematics classes and four religion classes each day, but she later taught four mathematics classes and three religion classes each day. And in her final year at St. Mary's (2004-2005), she taught four mathematics classes and two religion classes each day.

At her deposition, Weishuhn explained that her religious-education duties entailed teaching sixth-, seventh-, and eighth-grade religion classes. She was also responsible for planning Masses for those grades, as well as assisting a fourth-grade teacher with student liturgies. Weishuhn and the St. Mary's pastor discussed

the subject matter of the Masses. Weishuhn also prepared her seventh- and eighth-grade students for the sacrament of confirmation, and she developed reconciliation (penance) services twice a year. At her deposition, Weishuhn agreed that her responsibilities were ministerial in the sense that she provided religious direction for her students. She also testified that religion was an integral part of the school's curriculum and her lesson plan.

### C. THE PROCEEDINGS BELOW

After a series of employment-related incidents, none of which involved the subject of religion, St. Mary's terminated Weishuhn's employment in the spring of 2005. Weishuhn later filed a two-count complaint against defendants, alleging violations of the Whistleblowers' Protection Act[1] and the Civil Rights Act[2] for retaliatory termination. Defendants then moved for summary disposition pursuant to MCR 2.116(C)(10), asserting that both of Weishuhn's claims failed as a matter of law. The trial court granted the motion with respect to the Whistleblowers' Protection Act claim, but it denied the motion with respect to the retaliation claim under the Civil Rights Act.

In June 2006, defendants moved for summary disposition pursuant to MCR 2.116(C)(4), arguing that the trial court lacked subject-matter jurisdiction over Weishuhn's employment-discrimination claim because of the ministerial exception. Defendants asserted that "[b]ecause [Weishuhn's] duties while employed by St. Mary's School included a 'spiritual function,' the First Amendment of the United States Constitution pre-

---

[1] MCL 15.361 *et seq.*

[2] MCL 37.2101 *et seq.*

cludes application of the Elliott Larsen Civil Rights
Act . . . to [her] employment relationship with St.
Mary's School." The trial court denied defendants'
motion, ruling that there was a question of fact for the
jury in terms of whether Weishuhn's primary function
was spiritual in nature. In reaching its conclusion, the
trial court noted that the caselaw cited by the parties
used the word "primary." The trial court also acknowl-
edged that there appeared to be some overlap between
Weishuhn's duties in terms of secular and spiritual
teaching, and opined that "this is a case that maybe
could create some new law in this area, at least maybe
get some clarification as to whether or not there needs
to be an analysis by the court with respect to this
primary or secondary purpose." The trial court gave
effect to its ruling in a subsequent written order. The
trial court also denied defendants' motion for reconsid-
eration of this matter. Defendants now appeal.

### III. THE MINISTERIAL EXCEPTION

#### A. STANDARD OF REVIEW

This Court reviews de novo a motion for summary
disposition pursuant to MCR 2.116(C)(4).[3] "When view-
ing a motion under MCR 2.116(C)(4), this Court must
determine whether the pleadings demonstrate that the
defendant was entitled to judgment as a matter of law,
or whether the affidavits and other proofs show that
there was no genuine issue of material fact."[4] This
Court also reviews constitutional issues de novo on
appeal.[5]

---

[3] *Cork v Applebee's of Michigan, Inc*, 239 Mich App 311, 315; 608 NW2d
62 (2000).

[4] *Id.*

[5] *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007).

### B. THE CIVIL RIGHTS ACT

As noted above, Weishuhn alleged a violation of the Civil Rights Act. One purpose of that act is "to eradicate particular forms of discrimination in the workplace."[6] The act provides in pertinent part that "a person shall not . . . [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act."[7]

### C. THE FIRST AMENDMENT

The First Amendment of the United States Constitution provides in pertinent part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"[8] The First Amendment applies to the states through the Fourteenth Amendment.[9] "[T]he state and federal provisions of the Establishment Clause and the Free Exercise Clause of the First Amendment of the United States Constitution[] are subject to similar interpretation."[10] The Establishment Clause guarantees governmental neutrality with respect to religion[11] and guards against excessive governmental entanglement with re-

---

[6] *Elezovic v Ford Motor Co*, 274 Mich App 1, 6; 731 NW2d 452 (2007).

[7] MCL 37.2701(a).

[8] US Const, Am I.

[9] *Assemany v Archdiocese of Detroit*, 173 Mich App 752, 759; 434 NW2d 233 (1988), citing *Cantwell v Connecticut*, 310 US 296, 303; 60 S Ct 900; 84 L Ed 1213 (1940).

[10] *Scalise v Boy Scouts of America*, 265 Mich App 1, 11; 692 NW2d 858 (2005). See also *Advisory Opinion re Constitutionality of PA 1970, No 100*, 384 Mich 82, 105; 180 NW2d 265 (1970).

[11] *Scalise, supra* at 14-15, citing *Good News Club v Milford Central School*, 533 US 98, 106; 121 S Ct 2093; 150 L Ed 2d 151 (2001).

ligion.[12] And the Free Exercise Clause generally prohibits governmental regulation of religious beliefs.[13]

#### D. THE CONTOURS OF THE MINISTERIAL EXCEPTION

The ministerial exception has its roots in the First Amendment's guarantees of religious freedom[14] and, generally, it "bars any inquiry into a religious organization's underlying motivation for [a] contested employment decision."[15] More specifically, the ministerial exception "precludes subject matter jurisdiction over claims involving the employment relationship between a religious institution and its ministerial employees[.]"[16] Federal courts have held that the ministerial exception bars employment-discrimination claims under the federal Civil Rights Act,[17] the Americans with Disabilities Act,[18] the Age Discrimination in Employment Act,[19] and common-law claims.[20] Courts applying the ministerial exception to employment-discrimination claims base such application on a religious "institution's constitutional right to be free from judicial interference in the selection of . . . employees."[21] And one state supreme court has described the ministerial exception as a

---

[12] *Lemon v Kurtzman*, 403 US 602, 612-613; 91 S Ct 2105; 29 L Ed 2d 745 (1971).

[13] *Wisconsin v Yoder*, 406 US 205, 220; 92 S Ct 1526; 32 L Ed 2d 15 (1972); *Sherbert v Verner*, 374 US 398, 402; 83 S Ct 1790; 10 L Ed 2d 965 (1963); *Assemany, supra* at 759.

[14] *Hollins v Methodist Healthcare, Inc*, 474 F3d 223, 225 (CA 6, 2007).

[15] *Petruska v Gannon Univ*, 462 F3d 294, 304 (CA 3, 2006).

[16] *Hollins, supra* at 225.

[17] 42 USC 2000e *et seq.*

[18] 42 USC 12101 *et seq.*

[19] 29 USC 621 *et seq.*

[20] *Hollins, supra* at 225.

[21] *Id.*

"nonstatutory, constitutionally compelled" exception to federal civil rights laws.[22]

We note that "[w]ith respect to questions of federal law, this Court is not bound by precedent from federal courts except the United States Supreme Court."[23] "However, where the United States Supreme Court has not resolved an issue, a state court may choose among conflicting lower federal court decisions ... to adopt the rule it determines to be most appropriate."[24] And, in applying the ministerial exception to state civil rights laws, one state appellate court has noted that "there is ... no reason why an exemption carved by the courts from federal civil rights laws should not also apply to their state analogs."[25]

However, the United States Court of Appeals for the Fourth Circuit has cautioned that "[t]he ministerial exception does not insulate wholesale the religious employer from the operation of federal anti-discrimination statutes."[26] The United States Court of Appeals for the Third Circuit explained that the ministerial exception "requires federal courts to determine only whether the resolution of the plaintiff's claim would limit a church's right to choose who will perform particular spiritual functions."[27] The Third Circuit then continued as follows:

---

[22] *Catholic Charities of Sacramento, Inc v Superior Court,* 32 Cal 4th 527, 543-544; 10 Cal Rptr 3d 283; 85 P3d 67 (2004).

[23] *Moore v Moore,* 266 Mich App 96, 102; 700 NW2d 414 (2005).

[24] *Id.*

[25] *Hope Int'l Univ v Superior Court,* 119 Cal App 4th 719, 734; 14 Cal Rptr 3d 643 (2004).

[26] *Equal Employment Opportunity Comm v Roman Catholic Diocese of Raleigh,* 213 F3d 795, 801 (CA 4, 2000); see also *Hartwig v Albertus Magnus College,* 93 F Supp 2d 200, 211 (D Conn, 2000) ("the Free Exercise Clause does not shield all employment decisions by religiously-affiliated institutions").

[27] *Petruska, supra* at 305 n 8.

> [W]e agree with the implied findings of our sister circuits that Congress would prefer a tailored exception to Title VII than a complete invalidation of the statute. Finally, our remedy is limited: It does not apply to *all* employment decisions by religious institutions, nor does it apply to *all* claims by ministers. It applies only to claims involving a religious institution's choice as to who will perform spiritual functions.[28]

Therefore, "[w]hile the ministerial exception promotes the most cherished principles of religious liberty, its contours are not unlimited and its application in a given case requires a fact-specific inquiry."[29] As the United States Court of Appeals for the Sixth Circuit has succinctly stated, the ministerial exception applies when (1) the employer is a religious institution, and (2) the employee is a ministerial employee.[30] When the employer's " 'mission is marked by clear or obvious religious characteristics,' " this satisfies the first prong.[31] Thus, courts have held that "religiously affiliated schools, corporations, and hospitals . . . come within the meaning of a 'religious institution' " for purposes of the ministerial exception.[32]

Under the second prong, the scope of the ministerial exception depends on the individual's position. The Sixth Circuit previously "applied the ministerial exception only to ordained ministers"; however, it later extended the exception to a nonordained plaintiff who fulfilled a pastoral role in a hospital.[33] Therefore, rather than focusing on the fact of ordination, the function of

---

[28] *Id.* (emphasis in original).

[29] *Roman Catholic Diocese of Raleigh, supra* at 801.

[30] *Hollins, supra* at 225.

[31] *Id.* at 226, quoting *Shaliehsabou v Hebrew Home of Greater Washington, Inc*, 363 F3d 299, 310 (CA 4, 2004).

[32] *Id.* at 225.

[33] *Id.* at 226.

an individual's employment position has generally been dispositive of the question whether that position was "ministerial."[34] Accordingly, the ministerial exception applies when "the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship . . . ."[35] Under those circumstances, the employee is considered clergy.[36] Indeed, the United States District Court for the District of Connecticut stressed the primacy of the employee's religious duties and responsibilities:

> Courts are required to examine the duties and responsibilities of the particular employee and examine whether they are ministerial or secular in nature. It is only when the Court concludes that the employee had *primarily religious duties and responsibilities* that the employment decision made by the religiously-affiliated institution is barred from review by the Free Exercise Clause.[37]

In *McClure v Salvation Army*,[38] the plaintiff commenced an action alleging retaliation by the defendant Salvation Army after the plaintiff initiated a gender-discrimination claim. The United States Court of Appeals for the Fifth Circuit first stated that the Salvation Army was a church and that the plaintiff, as a denominated officer, was one of the Salvation Army's clergy.[39] The court then concluded that the First Amendment exempted the Salvation Army from federal civil rights laws under the circumstances, because its "ministers"

---

[34] *Id.*, citing *Rayburn v Gen Conference of Seventh-Day Adventists*, 772 F2d 1164, 1168 (CA 4, 1985).

[35] *Rayburn, supra* at 1169 (citation and quotation marks omitted).

[36] *Id.*

[37] *Hartwig, supra* at 211 (emphasis added).

[38] *McClure v Salvation Army*, 460 F2d 553, 555 (CA 5, 1972).

[39] *Id.* at 554.

were "the chief instrument by which the church seeks to fulfill its purpose."[40]

Other jurisdictions have consistently applied the ministerial exception in cases where the plaintiffs' positions were inherently or exclusively religious, as in the case of clergy members and the like.[41] Additionally, courts have applied the ministerial exception to cases where the plaintiffs' functions were essentially liturgical, that is, related to worship.[42] Yet other courts have also applied the ministerial exception to cases where the plaintiffs' functions were inextricably intertwined with a religious institution's doctrine[43] and where the plaintiffs' positions entailed proselytizing on the defendant church's behalf.[44] But foreign jurisdictions have not

---

[40] *Id.* at 559.

[41] See, e.g., *Petruska, supra* at 299, 305 (chaplain); *Williams v Episcopal Diocese of Massachusetts*, 436 Mass 574, 577; 766 NE2d 820 (2002) (ordained priest); *Gellington v Christian Methodist Episcopal Church, Inc*, 203 F3d 1299, 1304 (CA 11, 2000) (minister); *Combs v Central Texas Annual Conference of United Methodist Church*, 173 F3d 343, 350 (CA 5, 1999) (clergy member); *Sanchez v Catholic Foreign Society of America*, 82 F Supp 2d 1338, 1345 (MD Fla, 1999) (ordained priest seeking to be rehired as priest); *Bell v Presbyterian Church*, 126 F3d 328, 332-333 (CA 4, 1997) (ordained minister); *Young v Northern Illinois Conference of United Methodist Church*, 21 F3d 184, 187 (CA 7, 1994) (probationary minister); *Natal v Christian & Missionary Alliance*, 878 F2d 1575, 1576, 1578 (CA 1, 1989) (clergyman); *Rayburn, supra* at 1167 (applicant for pastoral position at church).

[42] See, e.g., *Tomic v Catholic Diocese of Peoria*, 442 F3d 1036, 1037, 1042 (CA 7, 2006) (church music director and organist); *Egan v Hamline United Methodist Church*, 679 NW2d 350, 354 (Minn App, 2004) (church music director); *Miller v Bay View United Methodist Church, Inc*, 141 F Supp 2d 1174, 1181-1182 (ED Wis, 2001) (church music and choir director); *Roman Catholic Diocese of Raleigh, supra* at 802 (director of music ministry and part-time music teacher at religious school); *Starkman v Evans*, 198 F3d 173, 174, 177 (CA 5, 1999) (church choir director).

[43] See, e.g., *Shaliehsabou, supra* at 301, 309 (a kosher supervisor for the defendant nonprofit religious and charitable corporation).

[44] *Alicea-Hernandez v Catholic Bishop of Chicago*, 320 F3d 698, 703 (CA 7, 2003) (communications manager for the Archdiocese of Chicago).

extended the ministerial exception to cases where the plaintiffs' positions have no connection with the religious institution's doctrinal mission.[45]

### E. THE MINISTERIAL EXCEPTION AND THE TEACHING FUNCTIONS

#### (1) CASES APPLYING FIRST AMENDMENT RATIONALE

We first note that there are cases in which courts have concluded that the ministerial exception applied to teachers, but then disposed of those cases on a broader First Amendment rationale. For example, in *Stately v Indian Community School of Milwaukee, Inc*,[46] although the United States District Court for the Eastern District of Wisconsin found that the plaintiff filled a ministerial position, it ultimately concluded that her claim must fail under Establishment Clause grounds because her claim "would result in excessive entanglement both procedurally and substantively." Similarly, in *Curay-Cramer v Ursuline Academy of Wilmington*,[47] the United States District Court for the District of Delaware concluded that the ministerial exception applied to the plaintiff, who taught English and religion classes, but ultimately dismissed the plaintiff's case on application of the Free Exercise Clause. And in *Powell v Stafford*,[48] the United States District Court for the District of Colorado also concluded that the ministerial

---

[45] See, e.g., *Archdiocese of Washington v Moersen*, 399 Md 637, 639; 925 A2d 659 (2007) (organist); *Smith v Raleigh Dist of North Carolina Methodist Church*, 63 F Supp 2d 694, 706 (ED NC, 1999) (receptionist or secretary); *Lukaszewski v Nazareth Hosp*, 764 F Supp 57, 60-61 (ED Pa, 1991) (plant operations director).

[46] *Stately v Indian Community School of Milwaukee, Inc*, 351 F Supp 2d 858, 870 (ED Wis, 2004).

[47] *Curay-Cramer v Ursuline Academy of Wilmington*, 344 F Supp 2d 923, 926, 932, 935 (D Del, 2004), aff'd 450 F3d 130 (2006).

[48] *Powell v Stafford*, 859 F Supp 1343, 1348 (D Colo, 1994).

exception applied to a theology teacher at a Catholic high school but, instead of barring the plaintiff's claim on the basis of the ministerial exception, the court then provided an analysis under the Free Exercise Clause, concluding that "the balance of values does not favor the government's interference with the [defendant's] decision as to the appropriate individual to teach its theology" classes.[49]

### (2) CASES CONSTRUING THE MINISTERIAL EXCEPTION

However, there are a number of cases in which the courts have directly applied the ministerial exception to teachers. For example, in *Equal Employment Opportunity Comm v Catholic Univ of America*,[50] it was clear that the ministerial exception applied to a nun teaching canon law. And the Fourth Circuit has applied the ministerial exception to a director of music ministry and part-time music teacher at a religious school.[51] In reaching its conclusion, the Fourth Circuit noted that the plaintiff's "positions are bound up in the selection, presentation, and teaching of music, which is an integral part of Catholic worship and belief."[52] According to

---

[49] But see *Longo v Regis Jesuit High School Corp*, unpublished order of the United States District Court for the District of Colorado, entered January 25, 2006 (No. 02-CV-001957-PSF-OES), see 2006 US Dist LEXIS 4142, in which the district court reached an opposite conclusion. In that case, the plaintiff was also employed as a theology teacher, but the court concluded that the defendant was not entitled to summary judgment under the ministerial exception. Pp *2, *19. The district court opined that "it cannot be said that there are no disputed material facts that show that plaintiff's duties were 'exclusively religious' as in the *Powell* case, or even primarily religious in that they consisted of spreading the faith, or supervising or participating in religious ritual or worship." P * 19.

[50] *Equal Employment Opportunity Comm v Catholic Univ of America*, 317 US App DC 343; 83 F3d 455, 461-465 (1996).

[51] *Roman Catholic Diocese of Raleigh, supra* at 802.

[52] *Id.*

the court, "[a]t the heart of [the] case [was] the undeniable fact that music is a vital means of expressing and celebrating those beliefs which a religious community holds most sacred."[53]

Conversely, there are cases in which courts have ruled that the ministerial exception did not apply to teachers. For example, in *Redhead v Conference of Seventh-Day Adventists*,[54] the United States District Court for the Eastern District of New York ruled that the plaintiff, who taught one hour of Bible study each school day and spent the remainder of the school day on secular subjects, was not covered by the exception. In *Hope Int'l Univ v Superior Court*,[55] the California Court of Appeals found that the defendant had failed as a matter of law to establish that the plaintiffs, two professors who taught psychology, were covered by the ministerial exception. In *Hartwig v Albertus Magnus College*,[56] the United States District Court for the District of Connecticut found that there was a genuine issue of material fact regarding whether the plaintiff's duties were "primarily religious." And in *Guinan v Roman Catholic Archdiocese of Indianapolis*,[57] the United States District Court for the Southern District of Indiana concluded that the application of the ministerial exception to nonministers, like the plaintiff, was generally reserved to positions that were "close to being exclusively religious based, such as a chaplain or a pastor's assistant." The court also noted that "the

---

[53] *Id.*

[54] *Redhead v Conference of Seventh-Day Adventists*, 440 F Supp 2d 211, 220-222 (ED NY, 2006).

[55] *Hope Int'l Univ, supra* at 724.

[56] *Hartwig, supra* at 211.

[57] *Guinan v Roman Catholic Archdiocese of Indianapolis*, 42 F Supp 2d 849, 853 (SD Ind, 1998).

secular nature of [the plaintiff's] position [was] under-
scored by the fact that the [defendant] did not require
teachers at [its school] to be Catholic . . . ."[58]

Finally, in *Welter v Seton Hall Univ*,[59] the New Jersey
Supreme Court expressly rejected the proposition that
"an employee's status as a cleric within a religious
organization, standing alone, justifie[d] judicial absten-
tion from enforcement of rights in job security . . . ."
Ultimately, the court concluded that the plaintiffs did
not perform any ministerial duties.[60] Significantly, the
plaintiffs, in their roles as computer-science instruc-
tors, did not act as intermediaries between a church and
its congregation.[61] Indeed, rather surprisingly, the de-
fendant acknowledged that, but for the plaintiffs' status
as nuns, "this case presents a purely secular issue
cognizable in the civil courts."[62]

### F. MICHIGAN AND THE MINISTERIAL EXCEPTION

#### (1) *McLEOD*

In *McLeod v Providence Christian School*,[63] a panel of
this Court avoided applying the ministerial exception
directly. Rather, the panel utilized a broader First
Amendment analysis along the lines of *Stately*, *Curay-
Cramer*, and *Powell*. In *McLeod*, the plaintiff filed an
employment-discrimination action against a school that
the members of the Netherlands Reformed Congrega-

---

[58] *Id.* at 852-853.

[59] *Welter v Seton Hall Univ*, 128 NJ 279, 294; 608 A2d 206 (1992).

[60] *Id.* at 298.

[61] *Id.* at 299.

[62] *Id.* at 298.

[63] *McLeod v Providence Christian School*, 160 Mich App 333; 408
NW2d 146 (1987).

tion owned.[64] The plaintiff alleged that the school had a discriminatory policy of precluding employment for women with preschool-age children on the basis of the school's religious doctrine. The trial court denied the school's motion for summary disposition, concluding in part that the First Amendment had not been violated after "balancing the state's interest in eradicating sex discrimination against the burden placed upon [the school]'s First Amendment free exercise rights . . . ."[65]

On appeal, the school argued, among other things, that the antidiscrimination law violated its "First Amendment right to free exercise of religion."[66] The *McLeod* panel framed the issue as "whether the prohibition against employment discrimination on the basis of sex imposed by [MCL 37.2101 *et seq*.] impinges upon [the school] employer's First Amendment right of free exercise of religion."[67] In resolving this question, the panel employed the balancing test articulated by *Yoder* and *Sherbert*:

"First, the belief, or conduct motivated by the belief, must be religious in nature. Second, the party complaining of a free exercise clause violation must show that the regulations under review impose a substantial burden on the exercise of religion. Third, if the complaining party demonstrates that it is burdened by the regulations, the state must have a compelling state purpose for its laws. Relevant to this prong is an inquiry into whether there exists a less restrictive alternative to the regulation."[68]

---

[64] *Id.* at 336.

[65] *Id.* at 342.

[66] *Id.*

[67] *Id.*

[68] *Id.* at 343-344, quoting *Dep't of Social Services v Emmanuel Baptist Pre-School*, 150 Mich App 254, 262; 388 NW2d 326 (1986), citing *Sherbert, supra* at 403-407.

Applying the test, the *McLeod* panel concluded that the fact that religious beliefs motivated the school's conduct satisfied the first prong of the test.[69] The panel also concluded that the regulation imposed a burden on the school's exercise of religion, satisfying the second prong of the test. However, the panel concluded that the act's prohibition against sex discrimination did not constitute an undue burden on the school's religious beliefs. In reaching that conclusion, the panel noted that the act did not present the school with the type of " 'hard choice' " that an undue burden generally creates for such a religious institution.[70] Significantly, the act provided that an employer might apply for an exemption from the act on the basis of religious beliefs. Ultimately, the panel concluded that "the state's interest in eradicating employment discrimination renders the burden upon [the school]'s free exercise of religion a constitutionally permissible one."[71]

The *McLeod* panel also rejected the school's argument that the act violated the Establishment Clause, determining that the act did not "foster[] excessive entanglement between religion and government."[72] In reaching its conclusion, the panel noted that "[t]he act constitutes a restriction or a penalty upon certain hiring practices by providing a statutory right to those who are discriminated against to sue for money damages."[73] And the panel concluded that such a private cause of action would not "give rise to ongoing interference with the religious practices of the church[,]" or "result in any ongoing scrutiny of [the school]'s operations."[74]

---

[69] *McLeod, supra* at 344.

[70] *Id.*

[71] *Id.* at 345.

[72] *Id.* at 346.

[73] *Id.*

[74] *Id.*

## (2) *ASSEMANY*

Shortly thereafter, however, in *Assemany v Archdiocese of Detroit,*[75] a panel of this Court implicitly adopted the ministerial exception. In *Assemany*, the plaintiff filed an employment-discrimination suit against the defendant.[76] On appeal, the plaintiff argued that "a factual dispute existed as to whether plaintiff should be classified as a secular (layman) or nonsecular (religious) employee," and, therefore, the trial court improperly engaged in fact-finding when it granted the defendants summary disposition.[77] The plaintiff asserted that he was merely the church's organist and "a secular employee who supported defendants' religious activities but did not engage in the propagation of religious doctrine or faith."[78] The *Assemany* panel disagreed, concluding that the plaintiff's characterization of his position was oversimplified. In its analysis, the panel concentrated on the plaintiff's duties and responsibilities:

> Plaintiff was required to have a working knowledge of the Catholic religion and liturgy. He was responsible for the selection and teaching of all liturgical music in the parish. His primary responsibility was to enable and encourage the [defendants'] choir and congregation to participate in the Catholic liturgy through song. Plaintiff assumed a pastoral-liturgical leadership role in the parish.
>
> On the basis of the facts of this case, we conclude that, while employed [by the defendants], plaintiff was more than just an organist. He was the head of the musical branch of the Catholic liturgy there. Plaintiff was intimately involved in the propagation of Catholic doctrine and

---

[75] *Assemany, supra.*

[76] *Id.* at 758.

[77] *Id.*

[78] *Id.* at 763.

the observance and conduct of Catholic liturgy by the [defendants'] congregation.[79]

The *Assemany* panel concluded that based on the " 'function of his position,' " the plaintiff was "clergy" as defined in *Rayburn*[80] and that the Free Exercise Clause barred his discrimination claim.[81] The panel, therefore, held that the plaintiff "failed to establish the existence of a dispute concerning an issue of material fact as to his role at [the defendant church]" and that "[t]he trial court did not engage in fact finding when it held that plaintiff performed a nonsecular function at" the church.[82]

In its discussion, the *Assemany* panel noted cases where courts have "held that employment decisions by religious bodies regarding lay teachers in church-run schools whose duties include teaching religion directly or indirectly are protected by the Free Exercise Clause from claims under Title VII."[83] However, the panel also noted that "[i]n cases involving church employees who are not involved in the propagation of religious faith or religious doctrine, courts have held that Title VII actions against religious employers are not barred by the Free Exercise Clause notwithstanding the employers'

---

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.* at 761, citing *EEOC v Southwestern Baptist Theological Seminary*, 651 F2d 277, 283 (CA 5, 1981) (seminary instructors not entitled to Title VII coverage); *Maguire v Marquette Univ*, 627 F Supp 1499 (ED Wis, 1986) (Title VII sex discrimination suit by the plaintiff denied employment as associate professor of theology barred by First Amendment); *Miller v Catholic Diocese of Great Falls*, 728 P2d 794 (Mont, 1986) (the plaintiff's suit for breach of the covenant of good faith and fair dealing in employment following her discharge for failure to maintain discipline in the classroom barred by the Free Exercise of Religion Clause of the United States and Montana constitutions).

arguments that their employment decisions were founded on religious beliefs."[84]

The *Assemany* panel also noted a line of cases that barred employment-discrimination claims by employees performing religious functions at religious institutions.[85] Specifically, the *Assemany* panel cited *McClure*, the seminal ministerial-exception case, for the proposition that "the Free Exercise Clause precludes judicial review of decisions by religious bodies concerning discipline or employment of ministers."[86] Additionally, the *Assemany* panel noted that the " 'ministerial exception,' " as articulated by *McClure* and *Rayburn*, "does not depend upon ordination 'but upon the function of the position.' "[87] The *Assemany* panel then directly quoted the *Rayburn* holding:

> "As a general rule, if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered 'clergy.' . . . This approach necessarily requires a court to determine whether a position is important to the spiritual and pastoral mission of the church."[88]

Thus, the *Assemany* panel disposed of the case using

---

[84] *Assemany, supra* at 762, citing *Southwestern Baptist Theological Seminary, supra* (support and administrative staff of seminary covered by Title VII); *EEOC v Pacific Press Publishing Ass'n*, 676 F2d 1272 (CA 9, 1982) (editorial secretary for nonprofit publisher of religious books); *EEOC v Mississippi College*, 626 F2d 477 (CA 5, 1980) (assistant professor of psychology at private college owned and operated by the Mississippi Baptist Convention); *EEOC v Fremont Christian School*, 781 F2d 1362 (CA 9, 1986), and *McLeod, supra* (lay teacher at private school owned and operated by church).

[85] *Assemany, supra* at 760-762.

[86] *Id, supra* at 760, citing *McClure, supra* at 560-561.

[87] *Assemany, supra* at 760-761, quoting *Rayburn, supra* at 1168.

[88] *Assemany, supra* at 761, quoting *Rayburn, supra* at 1169 (internal quotation marks and citation omitted).

the ministerial exception, although it did not expressly state as much. Indeed, the *Assemany* panel's disposition of the plaintiff's claim directly relied on the *Rayburn* rationale and was certainly consistent with the Fourth Circuit's disposition of *Roman Catholic Diocese of Raleigh*.[89] As noted previously, the court there found that the plaintiff's "positions are bound up in the selection, presentation, and teaching of music, which is an integral part of Catholic worship and belief."[90]

### (3) *PORTH*

In *Porth v Roman Catholic Diocese of Kalamazoo*,[91] the plaintiff was a Protestant and former teacher at the defendant's Catholic school. The school terminated her employment after it did not renew her contract on the basis of a new school policy that provided that it would employ only Catholics as teachers. The plaintiff filed suit, arguing that the defendant's policy discriminated against her on the basis of religion, which was contrary to the Michigan Civil Rights Act.[92] The trial court granted summary disposition in favor of the defendant pursuant to MCR 2.116(C)(10), basing its ruling on the Free Exercise Clause and the ministerial exception.[93] The *Porth* panel affirmed, but on different grounds.[94] It stated that it was resolving the conflict between the free exercise of religion and the Michigan Civil Rights Act "in favor of religious liberty."[95] The panel then held that

---

[89] *Roman Catholic Diocese of Raleigh, supra* at 802.

[90] *Id.*

[91] *Porth v Roman Catholic Diocese of Kalamazoo*, 209 Mich App 630, 632; 532 NW2d 195 (1995).

[92] MCL 37.2101 *et seq.*

[93] *Porth, supra* at 632-633.

[94] *Id.* at 633.

[95] *Id.* at 632.

the Religious Freedom Restoration Act of 1993[96] barred application of the Michigan Civil Rights Act to the defendants' conduct.[97]

We note that the Religious Freedom Restoration Act of 1993 (the RFRA) "prohibit[ed] the government from substantially burdening a person's exercise of religion, even by means of a generally applicable, religion-neutral law, unless the government could demonstrate that the burden imposed furthers a compelling governmental interest and that it constitutes the least restrictive means of furthering such interest."[98] However, the United States Supreme Court later nullified the RFRA, holding that Congress exceeded its power in enacting that statute as applied to state laws.[99] Consequently, much of the reasoning of the *Porth* panel is no longer applicable.

The only mention of the ministerial exception in *Porth* comes in a footnote. There, the *Porth* panel stated that it "question[ed], but [did] not decide, the applicability of the 'ministerial exception.' "[100] The panel went on to state, "For purposes of defendants' motion for summary disposition, we accept plaintiff's factual assertion that her primary duties were secular in nature."[101]

Reading the *Porth* decision in its entirety, we conclude that in its footnote, the *Porth* panel did not question whether the ministerial exception *existed* in Michigan. Rather, particularly in light of the second

[96] 42 USC 2000bb *et seq.*

[97] *Porth, supra* at 640.

[98] *Greater Bible Way Temple v City of Jackson,* 478 Mich 373, 380-381; 733 NW2d 734 (2007).

[99] *City of Boerne v Flores,* 521 US 507, 519-520; 117 S Ct 2157; 138 L Ed 2d 624 (1997).

[100] *Porth, supra* at 633 n 1.

[101] *Id.*

sentence in the footnote, we conclude that the *Porth* panel merely questioned—but did not decide because it resolved the case on other grounds—whether the exception *applied* to the plaintiff's circumstances in light of her factual assertion that her primary duties were secular in nature. Therefore, we conclude that *Porth* does not control with respect to the question whether the ministerial exception exists in Michigan.

### (4) CONCLUSION

We conclude that under *Assemany* and the cases on which that decision relied, the ministerial exception exists in Michigan. This exception bars discrimination claims where religious employers employ or have employed plaintiffs with religious positions.[102] It precludes subject-matter jurisdiction over claims involving the employment relationship between a religious institution and its ministerial employees.[103] The exception "provides maximum protection of the First Amendment right to the free exercise of religious beliefs."[104] Moreover, "the ministerial exception . . . is robust where it applies . . . preclud[ing] any inquiry whatsoever into the reasons behind a church's ministerial employment decision."[105] However, the ministerial exception does not shield *all* employment decisions by a religious employer from antidiscrimination laws.[106]

We agree with the Third Circuit when it concluded that the application of the ministerial exception is not "inherently complex."[107] It requires our courts to deter-

---

[102] See *Assemany, supra* at 763.

[103] *Hollins, supra* at 225.

[104] *Rayburn, supra* at 1169.

[105] *Roman Catholic Diocese of Raleigh, supra* at 801.

[106] See *Petruska, supra* at 305 n 8; *Hartwig, supra* at 211.

[107] *Petruska, supra* at 305 n 8.

mine only whether the resolution of a plaintiff's claim would limit a religious institution's right to choose who will perform particular spiritual functions. It is a tailored exception to the application of employment-discrimination and other similar statutes, not an invalidation of such statutes. And the remedy is limited, because it does not apply to *all* employment decisions by religious institutions nor does it apply to *all* claims by ministers.[108] The question here, then, is whether, under the circumstances of this case, the ministerial exception applies to Weishuhn's Civil Rights Act retaliation claim.

## IV. APPLYING THE MINISTERIAL EXCEPTION TO WEISHUHN'S CLAIM

### A. THE BASIS FOR THE EXCEPTION AND THE CLAIM BEFORE US

We observe, as is apparent from our discussion above, that the ministerial exception is grounded in the First Amendment. We further observe that, in their statement of the issues presented, defendants stated that the issue here was whether the "ministerial exception" precluded Weishuhn's claim pursuant to the Civil Rights Act. Thus, defendants explicitly based their appeal on the ministerial exception. In their reply brief to this Court, the defendants, however, now appear to be broadening their argument. The defendants state that

> [Weishuhn] suggests . . . that [d]efendants are attempting to hide behind the ministerial exception in order to circumvent her [Civil Rights Act] claim. *To the contrary, [d]efendants broadly maintain that they have a constitutional prerogative to make employment decisions with respect to teachers of religion, free from state interference.* [Emphasis supplied.]

---

[108] *Id.*

We reject defendants' invitation to broaden our inquiry here. We are cognizant that courts, including the panel in *McLeod*, have decided cases with somewhat similar facts on the basis of the First Amendment without explicitly utilizing the ministerial exception.[109] However, we have concluded above that the ministerial exception exists in Michigan, and we confine our discussion and decision here to the question whether, and how, that exception should apply to this case.

### B. THE PROCEDURAL POSTURE AND THE RULING BELOW

As we have noted, defendants moved for summary disposition below under MCR 2.116(C)(4), asserting that the trial court had no jurisdiction over Weishuhn's Civil Rights Act retaliatory-termination claim because of the ministerial exception. The trial court denied this motion from the bench, stating, among other things:

> [A]t this point, I'm gonna deny the motion because I do believe that, if you look at the cases, that there does seem to be—at least the words primary are used and—so it's possible, but at least that analysis should be taken; *and, if that is the case, then it creates a fact question for a jury;* and, therefore, I don't think it would be appropriate to grant summary disposition at this time; and, therefore, I'm gonna deny it. [Emphasis supplied.]

On the basis of our review de novo, we conclude that the trial court erred when it stated that the motion before it might create a fact question *for the jury*. A motion under MCR 2.116(C)(4) relates to the subject-matter jurisdiction of the court. This is a question of law for the judge, not a question of fact for the jury.[110] We note, however, that the trial court's confusion on

---

[109] See *Stately, supra, Curay-Cramer, supra,* and *Powell, supra.*

[110] *Lapeer Co Clerk v Lapeer Circuit Judges,* 465 Mich 559, 566; 640 NW2d 567(2002).

this point is certainly understandable. In *Sargent v Browning-Ferris Industries*[111] and subsequent cases,[112] we have determined that trial courts have properly granted summary disposition under MCR 2.116(C)(4) "if the pleadings showed that defendant was entitled to judgment as a matter of law, *or the affidavits and other proofs showed that there was no genuine issue of material fact.*"[113]

Thus, the question whether there is a genuine issue of material fact—a phrase normally associated with a motion under MCR 2.116(C)(10)—is germane to a motion under MCR 2.116(C)(4). This is so because under MCR 2.116(G)(2), a party may submit affidavits, depositions, admissions, or other documentary evidence to support or oppose the ground asserted in various types of motions, including motions under MCR 2.116(C)(4). Further, under MCR 2.116(I)(1), "If the pleadings show that a party is entitled to judgment as a matter of law, *or if the affidavits or other proofs show that there is no genuine issue of material fact*" (emphasis supplied), then the court must render judgment without delay.

Thus, under the court rules, a determination that there is no genuine issue of material fact can play a part in ruling on a motion for summary disposition under MCR 2.116(C)(4), and this may, of necessity, involve the evaluation of the factual elements of a case. However, contrary to the trial court's comment, this evaluation is for the judge, not the jury, to undertake.

---

[111] *Sargent v Browning-Ferris Industries*, 167 Mich App 29, 33; 421 NW2d 563 (1988).

[112] See *Faulkner v Flowers*, 206 Mich App 562, 564; 522 NW2d 700 (1994); *Steele v Dep't of Corrections*, 215 Mich App 710, 712; 546 NW2d 725 (1996); *Cork, supra* at 315.

[113] *Sargent, supra* at 33 (emphasis supplied).

### C. THE TWO-PRONGED INQUIRY

#### (1) THE ELEMENTS OF THE INQUIRY

We adopt the Sixth Circuit's succinct description of the inquiry that courts must undertake with respect to the ministerial exception.[114] First, courts must determine whether the employer is a "religious institution."[115] Second, courts must determine whether the employee is a "ministerial employee."[116]

#### (2) ST. MARY'S STATUS

Here, there is no question that St. Mary's, the employer, is a religious institution. As the trial court observed, St. Mary's school exists not only for educational purposes "but also for the purpose of disseminating the Catholic doctrine."

#### (3) WEISHUHN'S STATUS

The salient question then is whether Weishuhn was a ministerial employee. On the basis of our review de novo, we are unable to determine whether the trial court reached a conclusion on whether Weishuhn was a ministerial employee. The trial court did engage in some discussion about whether Weishuhn's teaching functions were primarily religious in nature. But ultimately the trial court concluded that this was a fact question for the jury and therefore denied defendants' motion for summary disposition.

As we have stated above, this conclusion was erroneous. We recognize, however, that the trial court was

---

[114] *Hollins, supra.*

[115] *Id.* at 225.

[116] *Id.*

acting at a considerable disadvantage because there was no explicit holding that the ministerial exception existed in Michigan and no guidance from Michigan appellate courts regarding how to apply that exception. We therefore remand to the trial court for an analysis of, and conclusions with regard to, whether, in light of this opinion, Weishuhn was a ministerial employee. In this regard, the trial court shall consider the affidavits, depositions, admissions, or other documentary evidence that the parties have submitted. In undertaking that analysis and reaching these conclusions, the trial court should focus on the totality of Weishuhn's duties and responsibilities, her position, and her functions. More specifically, the trial court should consider the following non-exhaustive list of factors:

(1) Whether Weishuhn had primarily religious *duties* and *responsibilities* in the sense that her primary *duties* consisted of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship;

(2) Whether Weishuhn's *duties* had religious significance;

(3) Whether Weishuhn's *position* was inherently, primarily, or exclusively religious, whether that *position* entailed proselytizing on behalf of defendants, whether that *position* had a connection to defendants' doctrinal mission, and whether that *position* was important to defendants' spiritual and pastoral mission; and

(4) Whether Weishuhn's *functions* were essentially liturgical, that is, related to worship, and whether those *functions* were inextricably intertwined with defendants' religious doctrine in the sense that Weishuhn was intimately involved in the propagation of defendants' doctrine and the observance and conduct of defendants' liturgy by defendants' congregation.

If, after consideration of these factors, the trial court determines that Weishuhn's position and function were such that she was a ministerial employee, then the trial court shall enter an order dismissing Weishuhn's discrimination claim. But if after this inquiry the trial court concludes that Weishuhn was not a ministerial employee, it should schedule further proceedings as necessary for trial.

Vacated and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.